**Certiorari Denied, February 26, 2013, No. 33,992**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2013-NMCA-045**

**Filing Date: December 11, 2012**

**Docket No. 31,285**

**LAUREL C. EDENBURN,**

      **Plaintiff-Appellant,**

**v.**

**NEW MEXICO DEPARTMENT OF HEALTH**
**and DEBORAH BUSEMEYER, Appointed**
**Custodian of Records in the Department of Health,**

      **Defendants-Appellees.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Barbara J. Vigil, District Judge**

Becht Law Firm
Paul F. Becht
Albuquerque, NM

for Appellant

Long, Pound & Komer, P.A.
Mark E. Komer
Santa Fe, NM

for Appellees

Gary K. King, Attorney General
Mark Reynolds
Scott Fuqua
Santa Fe, NM

for Amicus Curiae New Mexico Attorney General

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Charles K. Purcell
Albuquerque, NM

for Amicus Curiae New Mexico Foundation for Open Government

**OPINION**

**BUSTAMANTE, Judge.**

**{1}** Appellant's motion for rehearing is granted. The opinion filed in this case on July 31, 2012, is withdrawn and this Opinion is substituted in its place. In addition to briefs by the parties on the motion for rehearing, the Court received briefs from amici New Mexico Foundation for Open Government (NMFOG) and the New Mexico Attorney General.

**{2}** Appellant, Laurel C. Edenburn, sought to obtain records from Appellee, the New Mexico Department of Health (DOH).[1] After receiving some materials but being denied others, Appellant filed a petition for a writ of mandamus to force DOH to disclose the withheld material. DOH moved for and was granted summary judgment. We reverse.

**I.     BACKGROUND**

**{3}** Edenburn's first request letter was sent on August 20, 2007. It requested access to seven categories of information related to the Title V Abstinence Education Block Grant program managed by DOH. The letter referenced New Mexico's Inspection of Public Records Act (IPRA). *See* NMSA 1978, §§ 14-2-1 to -12 (1947, as amended through 2011). The letter was received on August 24, and DOH responded on that day, stating that the request was received and a response would be provided "within [fifteen] days in accordance with the [IPRA], unless we encounter difficulties in retrieving the [material]." *See* § 14-2-11 (setting forth requirements for denials of written requests). On September 10, seventeen days after receipt, DOH requested an extension "on your [IPRA]" request to September 15. On September 14, DOH notified Edenburn by email that the records would be available for inspection on September 18. Edenburn inspected them at the DOH offices. DOH notified Edenburn on September 21 that there "may be additional documents which may be responsive to your Public Records Request," and requested an extension to "provide careful review with the expectation of providing [Edenburn] with any responsive documents no later than the first week of October 2007." On October 10, Edenburn notified DOH that no additional documents had been received and she requested a number of documents that were not included in the inspection. DOH provided an additional set of documents to Edenburn

---

[1]For ease of reference we will refer to both Appellees throughout the Opinion as "DOH."

on October 25.

{4}     On November 2, Edenburn sent two letters to DOH referencing IPRA and identifying documents still not received. One of these letters requested copies of an email string and a draft letter, which are the subjects of the present enforcement action. For the sake of clarity, we will refer to these as the "email string" and the "draft letter." The request was received by DOH on November 7. DOH responded fourteen days later, stating that these two items were protected by executive privilege and would not be produced. Edenburn requested additional information about the basis for executive privilege on November 28, including which officials were involved in "sending or receiving" these items, whether the items were related to "law or policymaking," and, if so, the laws or policies to which they related, and whether the items were "deliberative in nature." On December 4, Edenburn sent another letter, stating that "relative to handling my [November 2] request for public records, the [DOH] has not complied with the terms of Section 14-2-11 of [IPRA]." *See* § 14-2-11 (stating that denial of access to public records must be made within fifteen days of receipt of the request and include the names of the persons responsible for the denial and a description of the records sought). DOH responded on January 4, 2008. This letter stated that the email string was "deliberative and predeterminative in nature and was written before any final determinations were made." It also clarified that the draft letter was not subject to executive privilege, but would not be produced because it was a draft and "therefore [is] not subject to public records status."

{5}     Edenburn filed a complaint to enforce the provisions of IPRA and for writ of mandamus or injunction on February 19, 2009. An amended complaint was filed on June 4, 2009, to change the name of the nominal defendant and add a request for attorney fees and costs. The complaint refers to Edenburn's letter of November 2, 2007, in which she requested access to inspect the DOH's records, including those previously withheld. The complaint alleges that "[DOH has] failed to comply with Section 14-2-11(B) . . . in that [DOH] failed to set forth the names and titles or positions of each person responsible for the denial . . . within fifteen (15) days after the request was received." In addition, the complaint alleges that "[DOH] should be required to pay damages to [Edenburn] not to exceed $100[] per day for each day [DOH] is not in compliance until a written denial is issued." DOH moved for summary judgment. DOH's motion was granted by two separate orders. The district court found that (1) the "rule of reason" applied to the draft letter and, under that rule, "countervailing public policy protects drafts such as this document from disclosure"; and (2) the email string was protected from disclosure by the deliberative process privilege, a form of executive privilege. *See generally* Russell L. Weaver & James T.R. Jones, *The Deliberative Process Privilege*, 54 Mo. L. Rev. 279 (1989). The district court did not conduct an *in camera* review of either document. The district court denied Edenburn's claim for statutory damages. This appeal followed.

## II.     DISCUSSION

### A.     The *Republican Party* Decision

**{6}** The primary question before the Court in this case is whether summary judgment was properly granted. We determine that it was not. We base this decision on the New Mexico Supreme Court's ruling in *Republican Party of New Mexico v. New Mexico Taxation & Revenue Department (Republican Party II)*, 2012-NMSC-026, 283 P.3d 853, which was decided after the present appeal was filed. In *Republican Party II*, the issue was whether the deliberative process privilege applied to prevent disclosure of documents in the context of a request for public records by plaintiffs who were "research[ing] whether undocumented aliens were voting in federal, state, and local elections in New Mexico." *Republican Party of N.M. v. N.M. Taxation & Revenue Dep't (Republican Party I)*, 2010-NMCA-080, ¶ 3, 148 N.M. 877, 242 P.3d 444 (internal quotation marks and citation omitted). The Republican Party of New Mexico sought records relating to driver's licenses issued to "individuals who are not citizens or legal residents of the United States." *Id.* (internal quotation marks and citation omitted). This Court held that the privilege applied and that the documents sought were properly withheld. *Id.* ¶ 36. On certiorari, the New Mexico Supreme Court reversed. *Republican Party II*, 2012-NMSC-026, ¶ 38. Several holdings in that case are dispositive of the matter before us because they eliminate the bases on which DOH relied to withhold the email string and draft letter, and on which the district court's ruling rested. We first summarize the relevant holdings of *Republican Party II*, and then apply them to this case. Next, we address whether *Republican Party II*'s holdings apply retroactively or prospectively. Finally, we address the issue of damages.

**{7}** First, our Supreme Court negated the "rule of reason" analysis adopted in *State ex rel. Newsome v. Alarid*, 90 N.M. 790, 797, 568 P.2d 1236, 1243 (1977) (internal quotation marks and citation omitted), as a "non-statutory exception to disclosure." *City of Farmington v. The Daily Times*, 2009-NMCA-057, ¶¶ 8, 11, 146 N.M. 349, 210 P.3d 246, *overruled by Republican Party II*, 2012-NMSC-026. It stated that, instead, "courts now should restrict their analysis to whether disclosure under IPRA may be withheld because of a specific exception contained within IPRA, or statutory or regulatory exceptions, or privileges adopted by this Court or grounded in the constitution." *Republican Party II*, 2012-NMSC-026, ¶ 16.

**{8}** Second, our Supreme Court held that "no deliberative process privilege exists under New Mexico law." *Id.* ¶ 42. The Court recognized that the term "executive privilege" includes several different types of privilege, including the deliberative process privilege and the executive communications privilege. *Id.* ¶ 18. Although the communications privilege "is required by the Constitution of the State of New Mexico, specifically the separation of powers clause contained in Article III," the deliberative process privilege is rooted in the common law. *Id.* ¶ 35 (alteration, internal quotation marks, and citation omitted); *see* N.M. Const. art. III, § 1. Because New Mexico recognizes only those privileges "required by the Constitution, the Rules of Evidence, or other rules of this Court," such a common law privilege is not recognized. *Republican Party II*, 2012-NMSC-026, ¶¶ 35, 38 (internal quotation marks and citation omitted). The Court stated, "Allowing the executive to resist disclosure on the basis of a common law deliberative process privilege not otherwise recognized under our state's constitution would frustrate IPRA's guiding purpose of

4

promoting government transparency." *Id.* ¶ 38.

**{9}** Third, the Court held that the communications privilege is itself limited. It applies only to communications "connected to the chief executive's decisionmaking, as opposed to other executive branch decisionmaking," and only to those "to or from individuals in very close organizational and functional proximity to the Governor." *Id.* ¶¶ 44-46 (alteration, emphasis, internal quotation marks, and citation omitted). And "the privilege . . . [is] reserved to the constitutionally-designated head of the executive branch—the Governor." *Id.* ¶ 47. Consequently, only the Governor may assert the privilege. *Id.*

**{10}** Finally, the Supreme Court addressed how an assertion of the communications privilege should be evaluated in the context of IPRA and refined the procedures set out in earlier cases and different contexts. The procedures for evaluating executive privilege, first articulated in *State ex rel. Attorney General v. First Judicial District Court of New Mexico*, 96 N.M. 254, 261, 629 P.2d 330, 337 (1981), *abrogated on other grounds by Republican Party II*, 2012-NMSC-026, required the court to "balance the public's interest in preserving confidentiality to promote intra-governmental candor with the individual's need for disclosure of the particular information sought." *Id.* at 258, 629 P.2d at 334. Under *First Judicial's* approach, the agency must first show that the privilege applies. *Id.* Next, the requester must "show good cause for the production of the requested information." *Id.* If good cause is shown, then "the court must then conduct an *in camera* examination of the requested material," and "be satisfied that the . . . material would be admissible in evidence and that it is otherwise unavailable" to the requester. *Id.* If "these prerequisites are met," the materials must be disclosed "provided that the public's interest in preserving confidentiality does not outweigh the specific needs of the movant." *Id.*

**{11}** The *Republican Party II* Court distinguished *First Judicial*, noting that it "involved a discovery dispute, not a public records request." *Republican Party II*, 2012-NMSC-026, ¶ 49. The Court held that "a party requesting public records under IPRA need not assert any particular need for disclosure." *Id.*; *see* § 14-2-8(C) ("No person requesting records shall be required to state the reason for inspecting the records."). In addition, the Court held that *First Judicial*'s final balancing of the interests of the movant and the public's interest in confidentiality "does not apply to claims of executive privilege under IPRA." *Republican Party II*, 2012-NMSC-026, ¶ 49. "Instead, courts considering the application of executive privilege to an IPRA request must independently determine whether the documents at issue are in fact covered by the privilege, and whether the privilege was invoked by the Governor, to whom the privilege is reserved." *Id.*

**{12}** The overriding message of *Republican Party II* is that "every citizen has a fundamental right to have access to public records." *Bd. of Comm'rs of Doña Ana Cnty. v. Las Cruces Sun-News*, 2003-NMCA-102, ¶ 16, 134 N.M. 283, 76 P.3d 36 (internal quotation marks and citation omitted), *overruled on other grounds by Republican Party II*, 2012-NMSC-026; *see* § 14-2-1(A). The purpose of IPRA is "to ensure . . . that all persons are entitled to the greatest possible information regarding the affairs of government and the

5

official acts of public officers and employees." Section 14-2-5. "This right is limited only by the Legislature's enumeration of certain categories of records that are excepted from inspection." *Republican Party II*, 2012-NMSC-026, ¶ 13.

### 1. Email String

**{13}** DOH argued in the district court that the deliberative process privilege applied to the email string because it was between DOH employees and was "part of the internal decision-making process surrounding the DOH's determination of permissible and appropriate uses of remaining available federal funding for the 2007 fiscal year." Because New Mexico does not recognize the deliberative process privilege, that privilege cannot prevent disclosure. To the extent that DOH relies on the communication privilege in *First Judicial*, that privilege does not apply either. DOH does not assert that the email string was a communication involving the Governor, nor was the privilege asserted by the Governor. The email string is disclosable under IPRA.

### 2. Draft Letter

**{14}** IPRA defines public records as

> all documents, papers, letters, books, maps, tapes, photographs, recordings and other materials, regardless of physical form or characteristics, that are used, created, received, maintained or held by or on behalf of any public body and relate to public business, whether or not the records are required by law to be created or maintained.

Section 14-2-6(F).

**{15}** The parties do not dispute that the requested letter was a draft. Thus, there is no dispute of a material issue of fact; rather, the only question is whether draft documents fall within IPRA's definition of public records. It appears that the district court resolved this question in the affirmative and then applied the "rule of reason" to conclude that public policy against disclosure outweighed the general presumption in favor of public access to public records.

**{16}** DOH argues that draft documents are not public records and points to *Sanchez v. Board of Regents of Eastern New Mexico University*, 82 N.M. 672, 486 P.2d 608 (1971), the Office of the New Mexico Attorney General's *Inspection of Public Records Act Compliance Guide* (6th ed. 2009) (Guide), and "numerous regulations" in the New Mexico Administrative Code for support. We agree with both NMFOG and the Attorney General that these sources do not support DOH's position and that draft documents are public documents within IPRA's reach.

**{17}** We note first that DOH's position is belied by the broad language of the statute.

Under IPRA, public records include "all documents . . . used, created, received, maintained or held by or on behalf of any public body and relate to public business, whether or not the records are required by law to be created or maintained." Section 14-2-6(F); *see The Daily Times*, 2009-NMCA-057, ¶ 7 (stating that, under IPRA, public records are "broadly defined"). IPRA provides for eight exceptions to this definition, which further refine the definition of "public record" and highlight the broadness of the basic definition reflecting the general presumption in favor of public access to records. *See Las Cruces Sun-News*, 2003-NMCA-102, ¶ 11 ("Each inquiry starts with the presumption that public policy favors the right of inspection."). In addition, unlike open records statutes in some other states,[2] IPRA's definition does not exclude draft documents. DOH provides no argument based on the language of the statute that demonstrates that drafts are excluded from this broad definition.

**{18}** DOH argues that *Sanchez,* decided in 1971, "remains good law" and stands for the proposition that "preliminary, non-final material" is not a public record. In *Sanchez*, the Court held that a list of proposed salaries for university staff was exempt from disclosure because "no useful purpose would be served by disclosing preliminary contractual negotiations between the board and its . . . employees." 82 N.M. at 675, 486 P.2d at 611. Both NMFOG and the Attorney General argue that *Sanchez* is no longer good law because it pertained to a "version of IPRA that no longer exists" and because its reasoning rested on "an early application of the 'rule of reason.'" We agree that *Sanchez* is not controlling here.

**{19}** First, *Sanchez*'s holding relied on the Public Records Act, which defined "public records" differently than both the version of IPRA in place at the time and the current iteration of IPRA. *Compare* the Public Records Act, NMSA 1978, § 14-3-2 (G) (2005), *with* IPRA, NMSA 1953, § 71-5-1 (Supp. 1975) and § 14-2-6(F). In fact, the version of IPRA in place when *Sanchez* was decided did not even include a definition of public records. *See* § 71-5-1; *Newsome*, 90 N.M. at 797, 568 P.2d at 1243. In *Newsome*, the Court made clear that the two statutes were distinct because they had different purposes. 90 N.M. at 797, 568 P.2d at 1243. It held that the purpose of the Public Records Act was "to establish a system for preserving records," and that "[the Public Records Act and IPRA] have no relationship to each other for purposes of decision [on disclosure of personnel records]." *Id.* The *Sanchez* holding does not address today's IPRA.

---

[2]*See* Conn. Gen. Stat. Ann. § 1-210(b)(1) (West 2001) (exempting "[p]reliminary drafts or notes provided the public agency has determined that the public interest in withholding such documents clearly outweighs the public interest in disclosure"); 5 Ill. Comp. Stat. Ann. 140/7(f) (West 2011) (exempting "[p]reliminary drafts, notes, recommendations, memoranda and other records in which opinions are expressed, or policies or actions are formulated"); Kan. Stat. Ann. § 45-221(a)(20) (West 2011) (exempting "[n]otes, preliminary drafts, research data in the process of analysis, unfunded grant proposals, memoranda, recommendations or other records in which opinions are expressed or policies or actions are proposed").

**{20}**     Second, the *Sanchez* decision hinged in large part on the lack of "finality" of the list. *Sanchez*, 82 N.M. at 675-76, 486 P.2d at 611-12.  The Court wrote, "[w]e do not consider 'thought processes,' that is, the offer of a contract, such a public record as would require public inspection."  *Id*. at 675, 486 P.2d at 611.  The Court reasoned,

> We would deny the right to inspect these records of the Board of Regents on the subject of salary contract negotiations before the task was completed.  It would not seem fair that the general public should know the contents of an offer of salary to an individual conceivably prior to the receipt of the offer by the contemplated employee. . . . [W]e would not take away the right of the [p]etitioners to know about salary matters, but would merely suspend or defer the privilege of inquiry until the Board of Regents reaches its final conclusion, i.e., the culmination of the contract between the board and the individual.

*Id.* at 675-76, 486 P.2d at 611-12.  We agree with the Attorney General that "[t]he [C]ourt in *Sanchez* balanced the competing interests apparent in that case and decided that the right to know was outweighed by policy considerations."  Although not called so by the *Sanchez* Court, this analysis is essentially the "rule of reason," later recognized in *Newsome*, 90 N.M. at 797, 568 P.2d at 1243.  This rule "requires the district court to balance "the fundamental right of all citizens to have reasonable access to public records against countervailing public policy considerations which favor confidentiality and nondisclosure."  *The Daily Times*, 2009-NMCA-057, ¶ 8 (internal quotation marks and citation omitted).  In *Newsome*, the Court wrote that "[u]ntil the Legislature gives us direction [as to draft documents], the courts will have to apply the 'rule of reason' to each claim for public inspection as they arise."  90 N.M. at 797, 568 P.2d at 1243.  In *Republican Party II*, the Supreme Court held that subsequent modification of IPRA rendered the "rule of reason" obsolete: "[t]he Legislature has since responded to the [*Newsome*] Court's request, obviating any need that existed for application of the 'rule of reason,' by enumerating specific exceptions to disclosure[.]" 2012-NMSC-026, ¶ 16.  Thus, as the Attorney General argues, *Sanchez* is "limited to its facts as a rule of reason analysis, . . . . It is not a proclamation that draft documents are always exempt from IPRA."

**{21}**     DOH next  points to the Attorney General's Guide and states that it is "harmonious with *Sanchez*."  The Guide states,

> Even if related to the performance of their public duties, notes and other materials prepared or collected by public employees solely for their own use may not be public records.  These preliminary materials do not share the degree of finality suggested by the terms "documents," "papers" and "letters" in the definition of public records, and generally are not intended to perpetuate, formalize or communicate information for or on behalf of the public agency. . . .  Thus, such materials generally will not be considered public records, provided employees create or use them solely for their own

8

convenience and unless the materials are expressly referenced in or attached to a clearly public document, such as a final report.

Guide, at 29. DOH's reliance on the Attorney General's Guide is misplaced. First, the Guide is not binding on courts. Second, this language does not mean that draft documents are exempt from IPRA. Rather, as the Attorney General asserts, the passage "clarif[ies] that only notes and other materials prepared solely for an employee's own use might not be subject to IPRA . . . . This necessarily means that . . . some drafts are public records subject to [IPRA]."

{22}    Third, the Guide states in the same paragraph that

*like information protected by the executive privilege . . .*, dissemination [of drafts] could easily lead to *misinformation or false conclusions about the public entity's business*. Anticipation of disclosure could unnecessarily hamper a public employee's ability to do his or her job by *discouraging or tempering the employee's taking of notes*, keeping research materials or experimenting with creative ideas in preliminary drafts of memoranda and letters. An agency's effectiveness would be significantly *undermined if its employees, worried that every scrap of paper recording their own impressions or notes could be disclosed publicly, limited what they wrote down in the course of performing their duties*.

*Id.* (emphasis added). This explanation for why draft documents prepared for an employee's own use should not be disclosed echoes the reasoning behind the deliberative process privilege, which "has been developed with the stated purpose of protecting the frank and open discussions of ideas and the confidentiality of the give-and-take that occurs among agency members in the formulation of policy." *Republican Party II*, 2012-NMSC-026, ¶ 26 (internal quotation marks and citation omitted). This privilege was rejected by the Supreme Court. *Id.* ¶ 38. Like *Sanchez*, the Guide does not support DOH's argument that draft documents are not public records.

{23}    DOH's third argument is that draft documents fall within IPRA's catch-all exception ("as otherwise provided by law") because there are regulations exempting draft documents in the New Mexico Administrative Code. *See* § 14-2-1(A)(8). It cites to numerous provisions of the Code in support of its contention that "[t]he general scheme established in the Administrative Code is that draft material . . . is considered a non-record." *See, e.g.*, 1.13.3.7(Z) NMAC (6/30/2008); 1.18.308.7(H) NMAC (4/30/2012); 1.18.665.7(M) NMAC (12/20/2010). The cited regulations derive from the Public Records Act. *See* NMSA 1978, §§ 14-3-1 to -25 (1959, as amended through 2011); 1.13.3.3 NMAC (6/30/2008) (citing the Public Records Act as the statutory authority for this regulation); 1.18.308.3 NMAC (4/30/2008) (same); 1.18.665.3 NMAC (7/15/2010) (same). This argument is unavailing because a document's designation as a "non-record" for the purposes of the Public Records Act has no impact on its status as a public record under IPRA.

9

**{24}**    The Public Records Act was enacted approximately twelve years after IPRA.  *See Crutchfield v. N.M. Dep't of Taxation & Revenue*, 2005-NMCA-022, ¶ 23, 137 N.M. 26, 106 P.3d 1273.  "[W]e presume that the Legislature was informed as to existing law, and that the Legislature did not intend to enact a law inconsistent with any existing law."  *Id.* (alteration in original) (internal quotation marks and citation omitted).  Under this principle, we infer that the Legislature did not intend to create a conflict between the two statutes, as did the *Newsome* Court when it rejected explicitly any overlap between the Public Records Act and IPRA.  *Newsome*, 90 N.M. at 797, 568 P.2d at 1243.  There is no conflict between the IPRA and the Public Records Act definitions because the two statutes serve different purposes.  The regulations DOH cites govern whether and how long an agency must retain a document, but do not address whether that document is a public record under IPRA while it is retained.  The Guide provides an instructive example:  "[u]ntil it is erased, a tape recording of a board meeting is used, maintained or held by or on behalf of the board and, therefore, constitutes a public record.  During this time, even if it is very short, the tape is subject to inspection."  Guide, at 28; *see State ex rel. Toomey v. City of Truth or Consequences*, 2012-NMCA-104, ¶ 28, ___ P.3d ___.

**{25}**    To the extent DOH argues that the Legislature implicitly endorsed exemption of draft documents from public records by its failure to amend IPRA to address draft documents explicitly, we disagree.  DOH argues that the Legislature was aware of the "longstanding" regulations exempting drafts from public records and therefore incorporated those regulations into IPRA when it did not reject them.  We agree with NMFOG that the fact that the Legislature did not address the regulations promulgated pursuant to the Public Records Act in amendments to IPRA is "both unsurprising and uninformative."  As discussed, the Public Records Act and IPRA are very different statutes with different purposes.  There was no reason for the Legislature to address a conflict that does not exist.

**{26}**    Finally, we note that a regulation may prohibit the release of records under IPRA but only when it has the force of law.

> In most cases, a regulation or ordinance, by itself, may not be used to deny access to public records because it is not a "law" for purposes of the "otherwise provided by law" exception.  However, according to the New Mexico Supreme Court, a regulation making certain records private may be proper if the regulation is authorized by a statute and is necessary to carry out the statute's purposes.  *See City of Las Cruces v. Public Employee Labor Relations Bd.*, 121 N.M. 688, 917 P.2d 451 (1996).

Guide, at 21.  In *Public Employee Labor Relations Board*, the authorizing statute in question protected "the rights of public employees to collective bargaining and [ensured] that their choice to do so remains private," 121 N.M. at 691, 917 P.2d at 454, because the authorizing statute specifically prohibited discouraging, interfering with, restraining, or otherwise impeding employees' rights to organize.  *Id.* at 690, 917 P.2d at 453.  Therefore, a regulation preventing disclosure of a petition for representation was consistent with legislative intent

10

and covered by the "as otherwise provided by law" exception in IPRA. *Id.* (internal quotation marks and citation omitted). In this case, the purpose of the Public Records Act is "to establish a system for preserving records." *Newsome,* 90 N.M. at 797, 568 P.2d at 1243. This purpose is solely organizational. *See* § 14-3-6 ("The administrator shall establish a records management program for the application of efficient and economical management methods to the creation, utilization, maintenance, retention, preservation and disposal of official records."). Unlike the statute in *Public Employee Labor Relations Board*, there is nothing in the Public Records Act that gives a regulation designating draft documents as "non-records" the force of law in the sphere governed by IPRA. DOH does not direct us to any regulation with the force of law that prohibits release of the draft letter in this case. We conclude that the draft letter should be disclosed.

## B.     Analysis of Retroactivity

{27}     The Supreme Court did not indicate explicitly whether *Republican Party II* would apply retroactively or prospectively. When such a statement is lacking, there is "a presumption of retroactivity for a new rule imposed by a judicial decision in a civil case." *Beavers v. Johnson Controls World Servs., Inc.*, 118 N.M. 391, 398, 881 P.2d 1376, 1383 (1994) (rejecting the "bright-line rule of retroactivity in all civil cases" set out in *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86 (1993)). This presumption, however, "may be overcome by a sufficiently weighty combination of one or more . . . factors." *Beavers*, 118 N.M. at 398, 881 P.2d at 1383. These factors are: "(1) whether the case creates a new principle of law that has been relied upon[,] (2) the prior history of the rule[,] and (3) the inequity of retroactive application." *Stein v. Alpine Sports, Inc.*, 1998-NMSC-040, ¶ 9, 126 N.M. 258, 968 P.2d 769 (emphasis omitted). Reliance on the old rule is an important aspect of both the first and third factors. *See Beavers*, 118 N.M. at 399, 881 P.2d at 1384. This inquiry hinges partially on the degree of reliance: "[t]he greater the extent a potential defendant can be said to have relied on the law as it stood at the time he or she acted, the more inequitable it would be to apply the new rule retroactively." *Id.* at 401-02, 881 P.2d at 1386-87.

{28}     DOH justified withholding the email string and draft letter on different grounds. It withheld the email string on the basis that it was covered by the deliberative process privilege and the draft letter on the ground that drafts are not subject to IPRA at all. Amicus Attorney General argues that *Republican Party II*'s holding regarding the deliberative process privilege should be applied prospectively. In contrast, DOH does not address retroactivity of *Republican Party II*'s holding regarding the deliberative process privilege. DOH instead focuses its retroactivity argument on whether a decision regarding whether draft documents fall within IPRA's purview should be applied retroactively. DOH's rationale for exempting draft documents from IPRA appears to rest in large part on "public policy concerns that weigh against requiring disclosure of the draft . . . letter." In other words, it suggests a "rule of reason" analysis for why drafts should not be disclosed. It also relies on "the same principles upon which [the deliberative process] privilege is grounded." We address each of these issues.

11

## 1.       The Deliberative Process Privilege

**{29}**     The preliminary inquiry in a retroactivity analysis is whether the case in question announced a new rule. *Stein*, 1998-NMSC-040, ¶ 14.  The Attorney General argues that "[t]here is little doubt that the decision in *Republican Party II* overruled a clear precedent, namely the use of executive privilege to shield documents from production under IPRA." He states that "[b]efore *Republic[an] Party II*, State agencies—including [DOH]—frequently relied on the executive privilege as a basis for withholding documents from production under IPRA."  We do not agree that *Republican Party II* stated a new rule regarding the deliberative process privilege or overruled precedent on that issue.

**{30}**     *Republican Party II* was the Supreme Court's "first occasion to consider executive privilege in the context of a public records request."  2012-NMSC-026, ¶ 3.  The Court "h[e]ld emphatically that no deliberative process privilege exists under New Mexico law." *Id.* ¶ 42.  In doing so, the Court examined *First Judicial*, in which the Court considered executive privilege in the civil discovery context.  *Republican Party II*, 2012-NMSC-026, ¶¶ 34-43; *see First Judicial*, 96 N.M. at 257, 629 P.2d at 333.  The Court determined that although *First Judicial* "used language consistent with both an executive communications privilege and a deliberative process privilege," it did not actually endorse the latter. *Republican Party II*, 2012-NMSC-026, ¶ 40.  In fact, *First Judicial* "reject[ed] . . . common law privileges" such as the deliberative process privilege.  *Republican Party II*, 2012-NMSC-026, ¶ 38.  Thus, the Supreme Court clarified that that privilege has *never* existed in New Mexico and that the only privilege addressed in *First Judicial* was the executive communications privilege.  *Republican Party* II, 2012-NMSC-026, ¶ 40.  The Court "disavow[ed] *First Judicial* to the extent that it could be read to support the adoption of the deliberative process privilege," but did not overrule it as to its recognition of "a limited form of executive privilege derived from the constitution."  *Republican Party II*, 2012-NMSC-026, ¶¶ 42, 43.

**{31}**     We conclude that *Republican Party II* did not announce a new rule regarding the deliberative process privilege.  Thus, we need not assess any other *Beavers* factors. *Republication Part II*'s holding is retroactive.  DOH improperly withheld the email string and the draft letter to the extent that DOH withheld the letter based on a rationale grounded in the deliberative process privilege.

## 2.       The Rule of Reason

**{32}**     Next we address DOH's arguments regarding retroactive or prospective application of *Republican Party II* to withholding of draft documents.  To the extent that DOH and amici argue that this Court's holding in the present case regarding the draft letter states a new rule, we disagree.  *Republican Party II* overruled cases applying the "rule of reason" to justify withholding records and stated that "courts now should restrict their analysis to whether disclosure under IPRA may be withheld because of a specific exception contained within

12

IPRA, or statutory or regulatory exceptions, or privileges adopted by this Court or grounded in the constitution." 2012-NMSC-026, ¶ 16.  We are bound by this admonition.  Thus, our holding that there is no specific exception, statute, regulation, or privilege exempting draft documents is not a new rule—it is an application of the rule set out in *Republican Party II*. Consequently, our analysis is of the retroactivity of that rule.

**{33}**   The first *Beavers* factor has two parts.  The first is whether the case to be applied announced a new rule.  *Stein*, 1998-NMSC-040, ¶ 10.  It is clear that *Republican Party II* expressly overruled cases in which the "rule of reason" was endorsed and limited the scope of what documents are exempt from IPRA.  2012-NMSC-026, ¶ 16.  The second part of the first factor is the degree to which DOH relied on the precedent overruled by *Republican Party II*.  *Padilla v. Wall Colmonoy Corp.*, 2006-NMCA-137, ¶ 14, 140 N.M. 630, 145 P.3d 110.  DOH argues that "there has been widespread understanding by public bodies such as the [DOH] that preliminary drafts are non-records."  It argues that this understanding derives from IPRA's "as otherwise provided by law" exception, *Sanchez*, and the Attorney General's Guide.

**{34}**   We begin our assessment of reliance by noting that reliance cannot be shown by simply stating that the law before the new rule was different.  "[W]e have difficulty with the circular argument that the rule is not retroactive because pre-rule conduct was lawful—i.e., because the rule is not retroactive."  *Beavers*, 118 N.M. at 401, 881 P.2d at 1386.  Instead, we must delve into the "degree of reliance that persons affected . . . by the rule may have placed on the state of the law antedating the rule."  *Id.*  For example, in *Beavers*, the Court concluded that in the context of an intentional tort case "it is hard to imagine that a potential defendant plans his or her conduct with rules of liability or nonliability in mind."  *Id.* at 400, 881 P.2d at 1385.  In contrast, here, it is reasonable and likely that DOH or another agency sought information on "the state of the law" in order to act in accordance with it.  As we have discussed, however, the sources on which DOH claims to have relied do not declare that draft documents are exempt from IPRA.  As we noted above, the Administrative Code addresses the Public Records Act, not IPRA.  The Attorney General's Guide is careful to distinguish documents for personal use from draft documents subject to IPRA.  And *Sanchez* dealt with a version of IPRA that has been superseded, as acknowledged over thirty years ago in *Newsome*.  Reliance on these sources to withhold documents simply because they are drafts is therefore misplaced.  Although we recognize that a new rule was announced, we determine that the first factor weighs in favor of retroactivity.  *See Beavers*, 118 N.M. at 400, 881 P.2d at 1385 (stating that although a new rule was announced, the first factor weighed in favor of the presumption because a tortfeasor could not be said to rely on the "claimed absence of potential liability for [his] conduct").

**{35}**   We turn now to the second *Beavers* factor, in which we assess "whether retrospective operation will further or retard" the purposes of the new decision.  118 N.M. at 398, 881 P.2d at 1383 (internal quotation marks and citation omitted).  The Supreme Court was clear that its holding was required by the Legislature's intent to promote open government.  *See* § 14-2-5; *Republican Party II*, 2012-NMSC-026, ¶¶ 12-13.  The purposes of *Republican*

13

*Party II*'s holdings are, therefore, coextensive with the purpose of IPRA itself, which is "to ensure that New Mexicans have the greatest possible access to their public records." *San Juan Agric. Water Users Ass'n v. KNME-TV*, 2011-NMSC-011, ¶ 38, 150 N.M. 64, 257 P.3d 884. Since, after *Republican Party II*, a requester could simply renew his or her request for previously withheld documents in order to access them, retroactive application is not necessary to this overarching goal. We imagine that some cases currently in litigation may be resolved this way.

**{36}** We do not end our analysis there, however, because to do so ignores the function of IPRA's enforcement actions in achieving open government. These provisions serve to promote open government for all, not just for individual litigants, and are integral to the statute's purpose. *See* §§ 14-2-11, -12.; *San Juan Agric. Water Users Ass'n*, 2011-NMSC-011, ¶ 12 ("IPRA includes remedies to encourage compliance and facilitate enforcement. . . . By giving enforcement power to any person whose written request has been denied, IPRA's provisions create 'private attorneys general' for 'more effective and efficient enforcement' of IPRA than would be possible if only the attorney general . . . could enforce the statute."). In addition, it ignores an abiding principle that underlies the presumption of retroactivity: that similarly situated people should be treated similarly. *See Beavers*, 118 N.M. at 397, 881 P.2d at 1382. A finding of pure prospective application would deprive current litigants of their right under IPRA to seek damages, costs, and attorney fees. We are persuaded that the second factor is not strong enough to overcome the presumption of retroactivity.

**{37}** Finally, DOH argues that "[r]etroactive application may also place some agencies in the untenable position of facing claims that they erroneously responded to previous IPRA requests" when they responded in good faith based on the cases and regulations addressed above. DOH argues that "retroactive application creates the potential for unforeseen liability for civil damages . . . going back several years." But the practical impact of retroactive application appears to be limited. The universe of litigants is limited to five categories. First, there are those who will request records after *Republican Party II*. These requesters will have the benefit of that decision regardless of whether it applies retroactively or prospectively. *Beavers*, 118 N.M. at 397 n.7, 881 P.2d at 1382 n.7. Second are those who requested records, were denied, and lost an enforcement action. Litigants are entitled to damages under IPRA only when they prevail in an enforcement action. Section 14-2-12(D) ("The court shall award damages, costs and reasonable attorneys' fees to any person whose written request has been denied and *is successful in a court action* to enforce the provisions of the [IPRA]." (emphasis added)); *Derringer v. State*, 2003-NMCA-073, ¶ 10, 133 N.M. 721, 68 P.3d 961. These claims are likely precluded by res judicata. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) ("Nor are the res judicata consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case."); *Whenry v. Whenry*, 98 N.M. 737, 741, 652 P.2d 1188, 1192 (1982). Even if they are not, requesters are more likely to simply request the record again than to seek to re-open litigation. In any case, an agency could forestall an enforcement action by providing the requested records.

14

*See Derringer*, 2003-NMCA-073, ¶ 13 ("Our question is whether [IPRA] allows damages when a lawsuit is filed nearly a year after compliance [by the agency]. We have determined that it does not.").

**{38}** The third category consists of those who requested records over four years ago, were denied, and did not initiate an enforcement action. Enforcement actions by this group are barred by the statute of limitations. *See* NMSA 1978, § 37-1-4 (1880). Fourth are those who requested documents less than four years ago, were denied, and have not yet filed suit. Again, an agency could prevent a suit by providing the records. The risk of "unforeseen liability" for claims by these four types of requesters is minimal.

**{39}** Finally, there are those whose enforcement actions are ongoing, including Appellant. In these cases it may be possible for an agency to avoid some damages by immediately providing the requested draft records and thereby coming into compliance with the new rule. *See Derringer*, 2003-NMCA-073, ¶ 10. DOH argues that retroactive application "will likely have substantially unfair and inequitable impact on government agencies that have relied on the interpretation of the IPRA in the past." The Attorney General argues that "[i]t is . . . inequitable to retroactively apply money damages to [DOH] conduct that was entirely legal and proper at the time it was undertaken." We are not convinced that retroactive application would result in an inequity, since we have determined that the sources on which DOH relied did not support its position regarding drafts and *Republican Party II* held that New Mexico has never recognized the deliberative process privilege. Furthermore, the pool of possible litigants on these issues appears to be relatively small. If there were inequity to DOH, it is counterbalanced by the inequity that would occur were we to apply the new rule purely prospectively because Appellant incurred costs to pursue her rights under IPRA. As discussed, the IPRA enforcement provisions permit requesters to litigate on behalf of all citizens, which serves IPRA's goals of open government. *See* §§ 14-2-11, -12; *San Juan Agric. Water Users Ass'n*, 2011-NMSC-011, ¶ 12. If Appellant were denied the opportunity to pursue these damages, these purposes of IPRA would be undermined. Therefore, even if there were inequity to DOH, this factor weighs in favor of retroactivity because it serves the purposes of IPRA and because state agencies "[are] in a better position to ensure meaningful compliance with the law" and, therefore, "it [is] more equitable to let the financial detriments be borne by [DOH]" than by Appellant, "who [is] the Legislature's intended beneficiar[y]." *Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, ¶ 29, 149 N.M. 162, 245 P.3d 1214.

**{40}** We conclude that "[t]he three factors . . . do not . . . outweigh the presumption of retroactivity associated with a judicial decision" regarding IPRA's application to draft documents. *Beavers*, 118 N.M. at 402, 881 P.2d at 1387. DOH is liable for wrongful withholding of the draft letter.

**C.    Damages, Costs, and Attorney Fees**

15

**{41}** Given that we are reversing the judgment in favor of DOH and remanding for further proceedings, we determine that it is premature to address the issue of damages, fees, and costs. The district court did not consider these issues on their merits given its prior ruling. It is best to allow the district court to rule on them in the first instance in light of our decision.

## III.    CONCLUSION

**{42}** We reverse the district court as to both the email string and draft letter because neither the deliberative process privilege nor the rule of reason, on which its grant of summary judgment was based, are recognized in New Mexico. We remand for further proceedings consistent with this Opinion.

**{43}    IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

_____
**MICHAEL E. VIGIL, Judge**

**Topic Index for _Edenburn v. N.M. Dep't of Health_, No. 31,285**

**CIVIL PROCEDURE**
Writs

**GOVERNMENT**
Executive Privilege
Public Records

**MISCELLANEOUS STATUTES**
Inpsection of Public Records Act

**REMEDIES**
Writ of Mandamus