**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2020-NMCA-026**

**Filing Date: January 31, 2020**

**No. A-1-CA-37577**

**AUBREY L. DUNN,**

　　Plaintiff-Appellee,

v.

**NEW MEXICO DEPARTMENT
OF GAME AND FISH,**

　　Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF TORRANCE COUNTY
Matthew G. Reynolds, District Judge**

Released for Publication June 2, 2020.

Law Office of Marshall J. Ray, LLC
Marshall J. Ray
Albuquerque, NM

for Appellee

Miller Stratvert P.A.
Luke Salganek
Elizabeth Reitzel
Santa Fe, NM

for Appellant

**OPINION**

**VANZI, Judge.**

**{1}** The New Mexico Department of Game and Fish (NMDGF) appeals the district court's order of summary judgment compelling NMDGF to produce the names and email addresses of individuals who applied for hunting licenses in 2015 and 2016, pursuant to Plaintiff's request under the Inspection of Public Records Act (IPRA), NMSA

1978, §§ 14-2-1 to -12 (1947, as amended through 2019).[1] NMDGF contends the requested email addresses are not "public records" because they do not "relate to public business," as defined in IPRA, § 14-2-6(G); and therefore they need not fall under any IPRA disclosure exception to justify denial of Plaintiff's request for inspection. We disagree and affirm the district court's order granting summary judgment in favor of Plaintiff.

## BACKGROUND

{2}    In January 2017 Plaintiff submitted an IPRA request to NMDGF, seeking the names and email addresses given by all applicants for hunting licenses in 2015 and 2016, which NMDGF determined amounted to over 300,000 entries. NMDGF concluded that Plaintiff's request sought personal identifier information that did not constitute a public record subject to disclosure and agreed to produce only the applicants' names. Plaintiff filed suit in district court seeking an order compelling NMDGF to produce the applicants' email addresses. The district court subsequently granted Plaintiff's motion for summary judgment as a matter of law. The court concluded that Plaintiff's request did not fall under any disclosure exception recognized by IPRA. In addition, it held that NMDGF wrongfully withheld the email addresses pursuant to a policy decision to protect the applicants from potential harassment by anti-hunting groups, which runs contrary to IPRA and *Republican Party of New Mexico v. New Mexico Taxation & Revenue Department*, 2012-NMSC-026, ¶ 16, 283 P.3d 853.

## DISCUSSION

{3}    On appeal, NMDGF does not oppose summary judgment on the basis of a factual dispute. The parties dispute only whether the email addresses of applicants for hunting licenses are "public records" subject to disclosure under IPRA.[2] This presents a question of law that requires us to construe the statute and apply the relevant case law to undisputed facts. Our review is de novo. *See N.M. Found. for Open Gov't v. Corizon Health* (*NMFOG*), 2019-NMCA-___, ¶ 15, ___ P.3d ___ (No. A-1-CA-35951, Sept. 13, 2019) (explaining that whether documents at issue are public records presents an issue of statutory construction, a legal question we review de novo). "In discerning the Legislature's intent, we are aided by classic canons of statutory construction, and we look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Id.* (internal quotation marks and citation omitted). "In so doing, we take care to avoid adopting a construction

---

[1]The version of IPRA in effect at the time Plaintiff made his IPRA request in 2017 was last amended in 2013. Because our analysis remains the same under the previous and the current versions of IPRA, this opinion refers to the 2017 version of the statute, without special designation as such.

[2]The record before us does not contain an application for a hunting license or a description of the application or the information NMDGF requires applicants to provide as part of its licensing system. Thus, the alleged "public record" at issue is not clearly defined. NMDGF, however, does not dispute that it has kept a record of individuals who applied for hunting licenses in 2015 and 2016, including their email addresses. In the absence of an identified factual dispute, we presume that NMDGF maintains a record of the names and email addresses of individuals who applied for hunting licenses in 2015 and 2016 as a part of its licensing system.

that would render the statute's application absurd or unreasonable or lead to injustice or contradiction." *Id.* (internal quotation marks and citation omitted). "IPRA must be construed in light of its purpose and statutory provisions under IPRA should be interpreted to mean what the Legislature intended it to mean, and to accomplish the ends sought to be accomplished." *Id.* (internal quotation marks and citation omitted).

**{4}** The purpose of IPRA is "to ensure . . . that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of public officers and employees." Section 14-2-5. In light of this purpose, "[e]ach inquiry starts with the presumption that public policy favors the right of inspection." *Cox v. N.M. Dep't of Pub. Safety*, 2010-NMCA-096, ¶ 17, 148 N.M. 934, 242 P.3d 501 (internal quotation marks and citation omitted).

**{5}** IPRA defines "public records" as

> all documents, papers, letters, books, maps, tapes, photographs, recordings and other materials, regardless of physical form or characteristics, that are used, created, received, maintained or held by or on behalf of any public body *and relate to public business*, whether or not the records are required by law to be created or maintained.

Section 14-2-6(G) (emphasis added). NMDGF contends the email addresses of applicants for hunting licenses are not public records because they do not "relate to public business" as defined in Section 14-2-6(G). Noting the absence of a definition for "relate to public business" in IPRA's provisions, NMDGF relies on three main authorities for its interpretation: (1) the stated purpose of IPRA; (2) the *New Mexico Inspection of Public Records Act Compliance Guide* (*IPRA Guide*), at 26-27 (8th ed. 2015) and (3) this Court's opinion in *Cox*, 2010-NMCA-096, ¶¶ 30-31.

**{6}** NMDGF contends that the email addresses of hunters in New Mexico are not public records subject to IPRA because "[t]heir personal contact information does not provide information pertaining to either the affairs of government or the official acts of public officers and employees." In other words, the email addresses constitute personal contact information taken for administrative convenience that reveal nothing about the issuance of hunting licenses or other of NMDGF official acts, operations, or activities, and their disclosure implicates the privacy of New Mexico citizens. Plaintiff responds that NMDGF requires applicants to provide an email address as part of the administration of the program, and that those email addresses are gathered, maintained, and used by NMDGF to carry out its official licensing acts. Moreover, he argues, the email addresses relate to the public business of NMDGF because "[h]unting licenses are granted to permit members of the public to use public resources— resources that happen to be scarce, tightly regulated, and often controversial" noting, for example, that the distribution of game tags leads to questions every season raising issues of fairness and transparency. In Plaintiff's view, NMDGF asks this Court to adopt an overly restrictive definition of public records that would limit disclosure under IPRA to

information that impacts a substantive decision by a public body and afford those public bodies wide discretion to deny IPRA requests.

**{7}** In addressing NMDGF's argument that the purpose of IPRA is not furthered by construing "public records" to require disclosure of the applicants' email addresses, we begin by acknowledging that our cases have consistently stated, "[u]nder IPRA, public records are broadly defined." *NMFOG*, 2019-NMCA-___, ¶ 17 (internal quotation marks and citation omitted). We have held: "IPRA's broad language defining public records is clear that, absent an express exemption from disclosure, public agencies must produce all records, even those held by or created by a private entity 'on behalf of' the public agency." *State ex rel. Toomey v. City of Truth or Consequences*, 2012-NMCA-104, ¶ 10, 287 P.3d 364 (citing the "public records" definition of Section 14-2-6(G)); *see also Edenburn v. N.M. Dep't of Health*, 2013-NMCA-045, ¶ 17, 299 P.3d 424 ("IPRA provides for eight exceptions to this definition, which further refine the definition of 'public record' and highlight the broadness of the basic definition reflecting the general presumption in favor of public access to records.").

**{8}** The relevant provision of IPRA defines "public records" as all materials "used, created, received, maintained or held on or behalf of any public body and relate to public business[.]" Section 14-2-6(G). We emphasize that our case law requires us to construe the plain language in IPRA provisions and give the words their ordinary meaning to accomplish the legislative goal of public access to "public records," which we consistently view as broadly defined. *See NMFOG*, 2019-NMCA-___, ¶¶ 15, 17; *Edenburn*, 2013-NMCA-045, ¶ 17; *Cox*, 2010-NMCA-096, ¶ 17. Within this analytical framework, we observe that the plain language used to define "public records" in the phrase "relate to public business" is itself inexact and unamenable to a narrow construction. Giving the terms their ordinary meaning, "relate to" are expansive words that embrace a wide range of relevance and involvement.[3] More importantly, the terms "public business" are similarly broad words that can embrace a wide range of affairs and actions by or on behalf of public bodies.[4] *See Pacheco v. Hudson*, 2018-NMSC-022, ¶ 27, 415 P.3d 505 ("IPRA textually makes clear that it is aimed at 'the affairs of government' and the 'official' acts of public officers and employees." (quoting Section 14-2-5, stating the purpose of IPRA))). If the Legislature intended to limit the materials subject to disclosure as NMDGF suggests, then the Legislature could have qualified "public business" in a manner that used language requiring the materials to relate to a public body's substantive decisions, rather than material that is kept for purely administrative purposes. *See NMFOG*, 2019-NMCA-___, ¶ 15 (stating that in determining legislative intent behind IPRA provisions, "we look first to the plain

---

[3]*See Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/relate%20to (last visited on Jan. 9, 2020) (defining "relate to" in relevant part as "to connect (something) with (something else)[,]" "to be connected with (someone or something): to be about (someone or something)").

[4]*See Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/public (last visited on Jan. 9, 2020) (defining "public" in relevant part as "of or relating to a government" and "of or relating to people in general"); *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/business (last visited on Jan. 9, 2020) (defining "business" in relevant part as "role, function," "an immediate task or objective[,]" "a particular field of endeavor[,]" and "affair, matter").

language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended" (internal quotation marks and citation omitted)). Such a narrow interpretation is belied by the expansive language, "relate to public business," the otherwise broadly worded definition of "public records," and the absence of any limiting language. *See Edenburn*, 2013-NMCA-045, ¶ 17 (holding that the Department of Health's position that draft documents are not public records within IPRA's reach "is belied by the broad language of the statute" and the lack of an exclusion for draft documents in the definition); *cf.* § 14-2-8(C) ("No person requesting records shall be required to state the reason for inspecting the records.").

**{9}** Giving the words their ordinary meaning, we conclude that IPRA's definition of "relat[ing] to public business" means simply that the requested records are connected to governmental affairs or official actions by or on behalf of public bodies. *See, e.g.*, *NMFOG*, 2019-NMCA-___, ¶ 18 (relying on the plain language of Section 14-2-6(G) to determine that the settlement agreements at issue are public records held in relation to a public business because they "were plainly created and maintained in relation to a public business, here, the medical care and personal safety of the inmates held by the New Mexico Correction Department." The Legislature has done nothing to narrow the ordinary meaning of these terms, and the ordinary meaning comports with the goal of IPRA "to ensure . . . that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of public officers and employees." Section 14-2-5; *see NMFOG*, 2019-NMCA-___, ¶ 15 (stating that we look to the plain language in IPRA, give its words "their ordinary meaning, unless the Legislature indicates a different one was intended[,]" and construe IPRA provisions to achieve its legislative goal (internal quotation marks and citation omitted)).

**{10}** We further note that public agencies, like NMDGF, by their very nature, engage in the administration of governmental affairs, programs, and responsibilities. And the Legislature is clearly aware that some public records generated, received, or kept in connection with those affairs may contain personal identifier information. Indeed, the Legislature has made provisions for the protection of such information. *See* § 14-2-1(B) (permitting the redaction of "protected personal identifier information" contained in public records and explaining that the presence of such "information on a record does not exempt the record from inspection"); § 14-2-6(E) (defining "protected personal identifier information"). The Legislature did not, however, include email addresses or generally reference personal information kept for administrative purposes among the precisely defined "protected personal identifier information." *See* § 14-2-6(E). Thus, we are not persuaded that the Legislature intended to endow public bodies with discretion to identify and withhold records that are generated or kept for administrative purposes, do not impact substantive decisions, and that may otherwise contain personal information.

**{11}** Applying our broad construction of records that "relate to public business," we turn to the email addresses at issue. The statute governing licenses for game and fish requires NMDGF to create and provide blank and electronic applications for game and fish licenses, and it requires NMDGF to keep a record of all licenses issued and money received therefrom. NMSA 1978, § 17-3-5(A), (E) (2011); NMSA 1978, § 17-3-13

(2015). Undoubtedly, creating and collecting applications for game and fish licensing is done in connection with the governmental affairs of NMDGF. In regard to this process there does not appear to be a dispute. NMDGF also does not dispute that email addresses are collected from applicants to carry out its licensing program. Our case law provides that, as a general matter, information collected from the public by a governmental agency in connection with the administration of its public duties falls within the meaning of "public records."[5] Accordingly, we conclude the email addresses NMDGF collected in connection with its licensing system constitute "public records" that are subject to disclosure under IPRA in the absence of an applicable exception. *See Republican Party of N.M.*, 2012-NMSC-026, ¶ 16 ("[C]ourts now should restrict their analysis to whether disclosure under IPRA may be withheld because of a specific exception contained within IPRA, or statutory or regulatory exceptions, or privileges adopted by [our Supreme] Court or grounded in the constitution.").

**{12}**    NMDGF does not contend that there is an applicable exception contemplated by our Supreme Court's opinion in *Republican Party of N.M.*, 2012-NMSC-026, ¶ 16, and we, too, cannot identify one. To the extent that NMDGF relies on the *IPRA* Guide, at 26-27, and on this Court's language in *Cox*, 2010-NMCA-096, ¶¶ 30-31, these are not among the exceptions listed or recognized by our Supreme Court in *Republican Party of N.M.*, 2012-NMSC-026, ¶ 16. The Attorney General's IPRA Guide is not binding on courts. *See Edenburn*, 2013-NMCA-045, ¶ 21. Further, NMDGF's reliance on this Court's language in *Cox* is misplaced. In *Cox*, we determined that the citizen complaints against a police officer were public records subject to disclosure and did not fall under any exception, and we reversed the order of summary judgment entered in favor of the Department of Public Safety (DPS). 2010-NMCA-096, ¶¶ 11, 19, 29, 32. In requiring DPS to disclose the citizen complaints, we encouraged DPS to *consider* redacting personal information about the citizen complainant that was not relevant to the IPRA request at issue. *Id.* ¶¶ 30-31. We were not making a declaration of law, construing the meaning of "public records" that "relate to public business," identifying an exception, or further considering the merits of an IPRA request. In contrast, the IPRA request at issue in this case is for email addresses, and we are tasked with determining whether that

---

[5]*See ACLU of N.M. v. Duran*, 2016-NMCA-063, ¶¶ 5, 31, 40, 392 P.3d 181 (concluding that the defendant was wrongfully non-responsive when it withheld emails related to ACLU's IPRA request for records involving information gathered by the Secretary of State's Office in the course of its internal investigation of foreign nationals registering to vote in New Mexico and actually voting in New Mexico); *cf. Republican Pty. of N.M. v. N.M. Taxation & Revenue Dep't*, 2010-NMCA-080, ¶ 16, 148 N.M. 877, 242 P.3d 444 (involving no dispute that the New Mexico Motor Vehicle Division collected and kept public records containing drivers' personal information related to issuing drivers' licenses that would have been subject to disclosure provided there was no applicable exception; namely, the federal and state privacy acts that protect the private information related to drivers and list a number of exceptions that may apply to the redacted personal information), *rev'd on other grounds*, 2012-NMSC-026, ¶¶ 4, 11, 13, 283 P.3d 853 (indicating that the federal and state privacy acts constitute statutory bars to disclosure under the "catch-all" IPRA exception, but refusing to address the withholding of information under the federal and state privacy acts under the mootness doctrine). *See generally San Juan Agric. Water Users Ass'n v. KNME-TV*, 2011-NMSC-011, ¶ 16, 150 N.M. 64, 257 P.3d 884 ("Writings coming into the hands of public officers in connection with their official functions should generally be accessible to members of the public to determine whether those who have been entrusted with the affairs of government are honestly, faithfully and competently performing their function." (omission, internal quotation marks, and citation omitted)).

personal information itself falls under the definition of "public records." The IPRA request for the email addresses themselves was rightfully granted in this case, and *Cox* is not relevant to our analysis.

**{13}** To the extent NMDGF relies on out-of-state case law for support of its interpretation of our IPRA provision, NMDGF does not demonstrate that the other states have similar statutes or are otherwise bound by similar law in construing the meaning of "public records" and its narrow exceptions. Thus, we find no guidance in the cases upon which NMDGF relies from other jurisdictions. *See In re N.M. Indirect Purchasers Microsoft Corp.*, 2007-NMCA-007, ¶ 11, 140 N.M. 879, 149 P.3d 976 (stating that where New Mexico law is not instructive, we may find guidance in the decisions of other jurisdictions where those decisions are based on similar statutes; and even then it is only persuasive, not binding).

**{14}** Lastly, we agree with Plaintiff that accepting NMDGF's position—narrowly defining "public records" to exclude personal information kept for administrative purposes—is tantamount to creating an additional policy-based exception not identified in IPRA or in other statutes and regulations or in privileges adopted by our Supreme Court, nor mandated by our constitution. *See Republican Party of N.M.*, 2012-NMSC-026, ¶ 16 (listing the exclusive sources for exceptions to IPRA's mandated disclosure of public records). The creation of such a policy-based exception is not permitted by *Republican Party of N.M. See id.* (overruling cases that apply the "rule of reason" to create public policy exceptions not specifically identified in IPRA because the Legislature has since enumerated specific exceptions to disclosure).

## CONCLUSION

**{15}** Based on the foregoing, we affirm the district court's order of summary judgment in favor of Plaintiff.

**{16} IT IS SO ORDERED.**

**LINDA M. VANZI, Judge**

**WE CONCUR:**

**JULIE J. VARGAS Judge**

**JACQUELINE R. MEDINA, Judge**