Argued June 2; affirmed June 30; rehearing denied July 28, 1931

# DAY *v.* DAY
### (1 P. (2d) 123)

*G. E. Hamaker,* of Portland, for appellant.
*Arthur Clarke,* of Corvallis, for respondent.

■ KELLY, J. This is a divorce suit. The parties were married to each other on August 21, 1922. The first question presented by the record which we will consider is whether an abuse of discretion by the trial court has been shown in the matter of allowing suit money to plaintiff. It is claimed by plaintiff that, because of an insufficient allowance, she was prevented from procuring witnesses and that as a result she did not have an opportunity fully to present her case.

On August 20, 1929, plaintiff filed her complaint and at the same time plaintiff filed a motion asking, among other things, ''That the defendant be required to pay unto plaintiff the sum of $200 as suit money with which to assist her to prepare her suit for trial and with which to pay her witnesses' fees and other costs and expenses.''

On October 1, 1929, pursuant to said motion, an order was made by the court directing defendant to pay to plaintiff the sum of one hundred dollars attorney's fees and one hundred dollars suit money. On November 23, 1929, defendant complied with said order, as evidenced by a receipt signed by plaintiff and filed December 12, 1929, with the county clerk.

On October 26, 1929, plaintiff filed another motion for suit money. In this second motion plaintiff asked for seven hundred and fifty dollars to cover witness' fees, one hundred dollars for reporter's fee, one thousand dollars attorney's fee, and seventy-five dollars per month alimony pendente lite.

This motion was heard upon plaintiff's affidavit in support thereof and defendant's affidavit in opposition thereto; and, on December 31, 1929, the court entered an order overruling and denying it.

On February 11, 1930, plaintiff filed a third motion for suit money, wherein twelve witnesses are named,

one from Ontario, Oregon, two from Portland, one from Corvallis, one from Cottage Grove, and the remaining seven from Eugene. The total estimated expense of procuring these witnesses as shown by said third motion was $195.40.

Pursuant to said third motion an order was made by the court directing the defendant to pay into court the sum of two hundred dollars. This was promptly done by defendant. It may be noted that only three of the witnesses so named in plaintiff's third motion for suit money were called, and one of those proved to be adverse to plaintiff.

We find nothing in the record justifying the claim that the learned trial court abused its discretion in the matter of allowances for suit money.

■■ It is urged by plaintiff that the circuit court erred in overruling plaintiff's motion for continuance. Plaintiff's application for continuance was based upon her affidavit and that of her attorney. An examination of the affidavit of plaintiff discloses that in part she bases her purported right to a postponement upon the absence of the four men who are named as co-respondents, one of whom started for a trip around the world when this case was begun. It appears that as to this globe trotter, plaintiff was apprised by defendant that defendant intended to name him as a co-respondent in time for plaintiff to have subpoenaed him as a witness. The testimony which plaintiff claims Jones, of Suva, Fiji Islands, would give, if present, was flatly contradicted in plaintiff's own testimony.

Plaintiff discharged the attorney who first represented her and employed her present counsel. This did not relieve her of the necessity of being diligent in the preparation of her case. It appears from the testimony that when plaintiff left defendant she took a large

amount of personal property consisting of dishes, furniture, bedding, sterling silverware, diamonds, and an automobile. Upon leaving plaintiff also incurred about seven hundred dollars indebtedness at local stores for defendant to pay. She was and is the owner of an undivided one-seventh interest in the estate of her father. It is true that this interest in her father's estate is of uncertain value. It also appears that defendant arranged for an operation without cost to her, either for surgical or hospital fees or nurse hire, and thereafter paid her $75 a month while she convalesced. These facts indicate that plaintiff has not been without means by which she could have proceeded with the taking of the depositions of remote witnesses before her case came on for trial. A careful consideration of the record convinces us that sufficient diligence was not shown by plaintiff in the matter of procuring the testimony of the absent witnesses to justify a continuance because of their absence.

Plaintiff bases her claim for divorce upon alleged cruel and inhuman treatment. Plaintiff herself testified in accordance with many of the allegations of her complaint.

James Ware, a brother of plaintiff, testified that in the fall or summer of 1928, at his home, in Indian Valley, Idaho, plaintiff and defendant with a party of other people, had been drinking, and that defendant was pretty full. This witness also testified that, "Sis (plaintiff) was talking to Doctor (defendant) something about staying. He was in the yard. I am not quite sure where he was. He told her if she stayed she would stay for good, that she was no good to him or nobody else that he knew of."

This witness also testifed that in 1925, plaintiff and defendant visited him and did not use liquor on

that visit. In 1926 there was liquor; but none in 1927, on the occasions of the visits to the home of witness by plaintiff and defendant.

Mrs. Frank Ware, plaintiff's sister-in-law, testified that in the latter part of the year 1928, plaintiff came to the home of witness and while there suffered from an ailment of the gall bladder. The defendant was then in California. When he returned to Eugene witness called him on the 'phone, and later went to defendant's office. At that time defendant declined to call upon plaintiff or treat her, and said that he wasn't going to take care of her.

On cross-examination this witness was asked:

"Q. And when you saw Doctor Day, he told you that he and Mrs. Day were separated, and that he couldn't, under the circumstances wait upon her, didn't he?

"A. No, he didn't say that. He said he was all through and buttoned up, whatever that means."

         *        *        *        *        *

"Q. Doctor arranged to have her taken to the hospital and arranged to have Doctor Sether take care of her, didn't he?

"A. Yes, sir, he did after that."

Dr. Sether testified that on January 9, 1929, he performed a major surgical operation upon plaintiff removing her gall bladder and releasing an adhesion between the upper intestine and the liver. Dr. Sether also testified that plaintiff's ailment was of such a nature as to cause plaintiff to suffer very severe pain at times. Witness Fan Anlauf testified that on one occasion when Mr. and Mrs. Earl were bidding plaintiff and defendant good-by just prior to a trip by the Earls to Yellowstone, Mrs. Earl kissed the defendant good-by. The foregoing constitutes a fair summary of the testimony in chief in favor of plaintiff.

Plaintiff's testimony was contradicted by defendant and defendant's witnesses in so far as the same tended to prove marital misconduct on defendant's part.

The question of the credibility to be accorded to plaintiff is determinative of her right to the relief she seeks. We have already noted a glaring inconsistency in reference to the presence with plaintiff at night of one Jones in plaintiff's unlighted stateroom while plaintiff was disrobed upon the bed. Plaintiff testified as a witness that this incident took place; but in her affidavit for continuance plaintiff swore that Jones would testify that it did not take place.

Upon cross-examination, at first, plaintiff testified that she did not use intoxicating liquor at all prior to her marriage; then, that, if she did, it was like taking a cigarette just to be with the crowd, but not to excess at all; and, finally, that she might have taken a drink or so to be sociable, but never to an excess at any time. Witness Hugh H. Earl testified that in March, 1921, at the Osburn Hotel, with a party of seven or eight men and three women, plaintiff "was trying to dance the hootchy dance, but she was so intoxicated she would take a step and fall down and the men would laugh and pick her up and she would try it over again."

Evidently the trial court deemed plaintiff unworthy of belief. No good purpose can be served by detailing those parts of the record supporting defendant's allegations of infidelity on plaintiff's part. Suffice it to say that we find nothing in the record which impels us to differ with the trial court's findings of fact and conclusions of law except as to the restoration of plaintiff's maiden name.

It is argued that the trial court applied the rule of comparative rectitude in this case. This claim is

based upon the remarks of the court when requesting counsel for defendant to prepare and submit to plaintiff's counsel findings of fact, conclusions of law, and the form of decree.

After all the evidence had been introduced in the cause the following took place:.

"The Court: The court is ready to decide the case: The court will not in this case to any extent contribute to the further public degradation of some of the witnesses in this case by commenting upon it. That matter has been sufficiently accomplished by their own testimony in some instances.

"A consideration of the allegations of the complaint and a comparison, or a comparison between the allegations of the complaint and the testimony offered by the plaintiff in support thereof shows a very marked and material difference between the pleading and the proof.

"It should be sufficient to say that the court does not find that the plaintiff has sustained the burden of proof as to the allegations of the complaint.

"There are three possibilities in this kind of a case: The first is decree for the plaintiff, awarding her a divorce. That matter is unthinkable under the testimony. The second is a decree for the defendant, and the third is a decree that by reason of the parties being equally at fault neither party is entitled to the relief of equity in this matter.

"The court doesn't find that the defendant is wholly without fault, and concerning the testimony which has been offered here, without comment upon it, the court will say that there has been a large amount of perjured testimony by witnesses in the case, and that it has not been exclusively upon any one side. But the court does not find that the conduct as shown by the evidence of the defendant is reprehensible to the degree that the conduct as shown by the evidence on the part or concerning the plaintiff is reprehensible. I do not find from the evidence that the parties are equally at fault, and I therefore am compelled by the evidence to find

that though there may be some fault on the part of the defendant, that he is nevertheless entitled to a decree of divorce. The counsel for defendant may prepare findings of fact and conclusions of law and the form of decree and submit them to counsel for the plaintiff and present them to the court.''

The doctrine of comparative rectitude is the rule by which relief by divorce may be granted to the party least in fault when both have shown grounds for divorce. It is not necessary to invoke that doctrine here. The learned judge of the trial court did not say that defendant was guilty of conduct constituting a cause for divorce.

■■ We hold, as we think the trial court held, that plaintiff failed to prove a cause of divorce, because as to practically all of her specifications for cruelty she was entirely uncorroborated and because in every respect possible, from the nature of the alleged circumstances, she was contradicted by third parties as well as by defendant himself. Moreover, from our reading of the record we think that no such misconduct on defendant's part has been shown as to deprive him of his right to a divorce.

■ Plaintiff asked to have her maiden name of Lulu Mable Ware restored. It is, therefore, ordered that plaintiff's name be and the same is hereby changed to Lulu Mable Ware.

With this slight modification the decree of divorce in favor of defendant as entered in the circuit court is affirmed.

BEAN, C. J., RAND and ROSSMAN, JJ., concur.