The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: June 29, 2022

**No. A-1-CA-38060**

**BRYCE FRANKLIN,**

Plaintiff-Appellant,

v.

**NEW MEXICO DEPARTMENT OF**
**PUBLIC SAFETY and REGINA CHACON,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Matthew J. Wilson, District Judge**

Bryce Franklin
Las Cruces, NM

Pro Se Appellant

Keitha A. Leonard
Santa Fe, NM

for Appellees

**OPINION**

**WRAY, Judge.**

{1}    Plaintiff Bryce Franklin appeals from the district court's order granting summary judgment in favor of Defendants New Mexico Department of Public Safety (DPS) and Regina Chacon and from the district court's order denying Plaintiff's motion to reconsider. Plaintiff raises a matter of first impression and contends that Defendants failed to provide a proper and reasonable opportunity to inspect public records, as required by the Inspection of Public Records Act (IPRA), NMSA 1978 §§ 14-2-1 to -12 (1947, as amended through 2019[1]). Because we agree that Defendants' response to Plaintiff's IPRA request was not reasonable under the circumstances, we reverse and remand for further proceedings.

**BACKGROUND**

{2}    At the time he filed his complaint, Plaintiff was a prisoner at the Penitentiary of New Mexico (PNM), serving a life sentence. In his initial request, Plaintiff sought "to inspect" from Defendants itemized public records connected to the investigation

---

[1]The version of IPRA in effect at the time Plaintiff made his IPRA request was last amended in 2013. Because the provisions of IPRA relevant to this appeal are the same in both versions, our analysis remains the same under the previous and the current versions of IPRA. Accordingly, this opinion refers to the current version of the statute.

and prosecution that led to Plaintiff's murder conviction. Plaintiff's handwritten IPRA request stated,

> Inspection will have to occur at the penitentiary of New Mexico 4311 State highway 14 Santa fe, New Mexico. Upon inspection I require copies of those records at which time I will specify which pages I wish to obtain.[2]

Defendants noted the request as "received" and later, by separate communication, informed Plaintiff, "Your IPRA requested Incident Report is ready. Please remit the [t]otal below so that we may mail it to you." The invoice (First Response) totaled $89.75. Plaintiff's written response restated that his request had specifically sought to first inspect the records and then determine which pages he wanted to have copied and asked Defendants to

> please make available to me the forementioned records: at PNM 4311 state highway 14 Santa fe, NM 87504.

Defendants replied (Second Response) that physical inspection of the records was available at the DPS office during business hours, with advance notice to ensure proper staffing.

---

[2]In the district court, Plaintiff substituted the original IPRA request exhibit that had been attached to the complaint with an amended exhibit, which includes additional language, "Inspection will have to occur at the penitentiary of New Mexico 4311 State highway 14 Santa Fe, New Mexico." Defendants did not object to the amended exhibit or make any argument that the amended exhibit differed from the IPRA request originally received. We therefore refer to the amended exhibit.

2

{3}    After receiving Defendants' Second Response, Plaintiff initiated this litigation and alleged that Defendants unreasonably failed to make responsive documents available to Plaintiff and thus violated IPRA. The district court held a hearing, made findings, and granted summary judgment to Defendants from the bench. The subsequent order reflected the district court's oral rulings. The district court first concluded that Defendants' First Response, requesting payment for copies, did not violate IPRA. The district court next determined that Defendants had a duty "to provide reasonable access" to inspect records and that due to security and staffing concerns, Defendants "provided reasonable access for physical inspection of public records by allowing physical inspection of the records at the DPS offices." After the hearing (but before the district court entered the order), Plaintiff filed a motion to reconsider and sought to amend the complaint to include claims for statutory and constitutional violations. The district court denied Plaintiff's motion to reconsider, and he appealed.

**DISCUSSION**

{4}    IPRA requires public records custodians to "provide proper and reasonable opportunities to inspect public records." Section 14-2-7(C). Plaintiff asserts that the district court improperly granted summary judgment because Defendants failed to

3

provide a proper and reasonable opportunity to inspect.[3] The facts are undisputed. This appeal therefore requires us to evaluate de novo the district court's grant of summary judgment, the statutory requirements for the production of public records under IPRA, and the application of those requirements to the undisputed facts in the present case. *See Dunn v. N.M. Dep't of Game & Fish*, 2020-NMCA-026, ¶ 3, 464 P.3d 129 (noting that this Court reviews de novo disputes that require us to "construe the statute and apply the relevant case law to undisputed facts"); *Cox v. N.M. Dep't of Pub. Safety*, 2010-NMCA-096, ¶ 4, 148 N.M. 934, 242 P.3d 501 (observing that "[a]n appeal from the grant of a motion for summary judgment presents a question of law and is reviewed de novo" and "[t]he meaning of language used in a statute is a question of law that we review de novo" (internal quotation marks and citations omitted)). We must "construe IPRA in light of its purpose and interpret it to mean what the Legislature intended it to mean, and to accomplish the ends sought to be accomplished by it." *Britton v. Off. of Att'y Gen.*, 2019-NMCA-002, ¶ 27, 433 P.3d 320 (internal quotation marks and citation omitted). To discern legislative intent, "we look first to the plain language of the statute, giving the words their ordinary

---

[3] Because we agree that Defendants violated IPRA, we need not address Plaintiff's arguments that Defendants' IPRA responses violated equal protection principles, were discriminatory against indigent and immobile citizens, and violated federal law.

4

meaning, unless the Legislature indicates a different one was intended." *Dunn*, 2020-NMCA-026, ¶ 3 (internal quotation marks and citation omitted). Thus, before we evaluate Defendants First and Second Responses, we begin by considering IPRA's statutory framework.

**{5}** The purpose of IPRA "is to ensure . . . that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of public officers and employees." Section 14-2-5. IPRA affirmatively sets forth that "[e]very person has a right to inspect public records of this state," unless an explicitly identified exception applies. Section 14-2-1. A records custodian has a number of duties, including to "provide proper and reasonable opportunities to inspect public records." Section 14-2-7(C). In the present case, the parties do not dispute that the requested records are "public records of this state" as set forth in Section 14-2-1, and Defendants do not argue that an exception relieves them of the obligation to provide a proper and reasonable opportunity to inspect. The only issue is whether the opportunity to inspect that Defendants provided was "proper" and "reasonable," as required by IPRA's terms.

**{6}** IPRA defines neither "proper" nor "reasonable," nor have New Mexico courts previously considered the meaning of these terms in the context of Section 14-2-7(C). "Our basic task when interpreting any statute, of course, is to give effect to the [L]egislature's intent." *State v. Fellhauer*, 1997-NMCA-064, ¶ 4, 123 N.M. 476, 943

5

P.2d 123. When the statute itself provides little "from which we can draw any definitive conclusion" to assist our interpretation, we turn to the "commonly accepted plain meaning" of statutory terms to fulfill our obligation to effectuate the Legislature's intent. *Id.* We therefore consider the commonly accepted plain meaning of "proper" and "reasonable," beginning with "reasonable."

{7}    The term "reasonable" is defined by *Black's Law Dictionary* as "[f]air, proper, or moderate under the circumstances." *Reasonable*, *Black's Law Dictionary* (11th ed. 2019). In many contexts, New Mexico courts and the Legislature have applied an objective, under-the-circumstances approach to the term "reasonable." *See, e.g.*, *Rodriguez v. Del Sol Shopping Ctr. Assocs., L.P.*, 2014-NMSC-014, ¶¶ 1, 15, 326 P.3d 465 (observing that in the tort context, "whether the plaintiffs expect too much of the defendants—something more than what is reasonable—which is relevant to the issue of breach of duty" is a question for a jury); *Albuquerque Bernalillo Cnty. Water Utility Auth. v. N.M. Pub. Reg. Comm'n*, 2010-NMSC-013, ¶ 28, 148 N.M. 21, 229 P.3d 494 (explaining that due process contemplates notice "and a *reasonable* opportunity" to meet the opposing party's claims and "[t]hus, due process is flexible in nature and may adhere to such requisite procedural protections as the particular situation demands" (internal quotation marks and citations omitted)); *State v. Sewell*, 2009-NMSC-033, ¶ 13, 146 N.M. 428, 211 P.3d 885 (evaluating the constitutionality of an investigatory stop, "considering the totality of the circumstances" to determine

whether "the officers have a reasonable and objective basis" to suspect criminal activity (internal quotation marks and citation omitted)); *State v. Munoz*, 1998-NMSC-048, ¶ 40, 126 N.M. 535, 972 P.2d 847 (outlining an objective test to evaluate whether an interrogation was custodial, disregarding "the actual subjective beliefs of the defendant" and focusing on whether "a reasonable person would believe" they were free to leave, as well as the "relatively important" factual circumstances (internal quotation marks and citation omitted)); *Leyba v. Whitley*, 1995-NMSC-066, ¶ 28, 120 N.M. 768, 907 P.2d 172 ("As always, what is reasonable is a question of fact to be determined in light of all the surrounding circumstances."); *Martinez v. Showa Denko, K.K.*, 1998-NMCA-111, ¶ 25, 125 N.M. 615, 964 P.2d 176 (considering the information available to determine as a matter of law that the plaintiff had sufficient information to "put a reasonable person on notice"); *see also* NMSA 1978, § 55-1-205(a) (2005) (defining "reasonable time" under the Uniform Commercial Code to depend "on the nature, purpose and circumstances of the action"); UJI 13-1603 NMRA (describing "ordinary care" as that "which a reasonably prudent person would use in the conduct of the person's own affairs" and noting that "[w]hat constitutes 'ordinary care' varies with the nature of what is being done"). We see no reason—and have been offered none—to depart from the generally accepted view of "reasonable" as an objective test that considers all of the facts and circumstances.

7

**{8}** The term "proper," however, has escaped definition or consistent usage in our case law. Plaintiff suggests a definition of "proper" as "marked by suitability, rightness or appropriateness." *See Proper*, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/proper (last visited June 15, 2022). This definition, however, bears such a similarity to the accepted definition of reasonableness that the term "proper" would be rendered superfluous. We do not construe statutes to render their terms superfluous. *See State v. Vest*, 2021-NMSC-020, ¶ 18, 488 P.3d 626. An alternative definition of "proper," however, is "[s]trictly pertinent or applicable; exact; correct." *Proper*, *Black's Law Dictionary* (11th ed. 2019). Applying this definition to IPRA, in order to be "applicable" or "correct," an action must be contemplated by the terms of IPRA and its purposes. In other words, a commonly accepted plain meaning of "proper" entails conformity with those provisions of IPRA that guide a records custodian's actions. *See, e.g.*, § 14-2-7(D) (requiring records custodians to "provide reasonable facilities"); § 14-2-9(C) (permitting records custodians to charge reasonable fees).

**{9}** Plaintiff argues that each of Defendants' two responses to his IPRA request was neither proper nor reasonable. We consider each of Defendants' responses in turn.

**The First Response**

{10} Plaintiff first argues that Defendants' First Response was improper and unreasonable because he requested to inspect the documents before selecting those that he wished to copy and Defendants simply sent him an invoice for copies. We disagree. Beginning our analysis with "proper," Section 14-2-9(C)(1) states that "[a] custodian . . . *may* charge reasonable fees for copying public records." (Emphasis added.) The permissive nature of Section 14-2-9(C)(1) permits a records custodian to either charge fees for copies or *not* to charge fees. Both are permitted by the statute. The First Response, charging a fee for copies, was therefore proper and in conformance with IPRA, because IPRA permits Defendants to charge reasonable fees for copying. *See* § 14-2-9(C)(1). Turning to "reasonable," Plaintiff's initial request did not communicate that he could not pay for copies, but did request inspection at PNM, "without a fee." Under those circumstances, Defendants reasonably attempted to balance Plaintiff's request to review the documents first with getting the requested public records to him expeditiously for his review. We come to this conclusion in part because the First Response demonstrates that the requested records were actually prepared for Plaintiff's inspection and the First Response was not Defendants' only response. After Plaintiff reiterated that he wanted to physically inspect the records, Defendants continued the correspondence with the Second Response.

**The Second Response**

{11} After the First Response, Plaintiff communicated to Defendants that he did not yet want copies, but that the documents would have to be delivered for him to inspect first. The Second Response simply stated,

> Inspection of public records are conducted at [DPS] located at 4491 Cerrillos Rd, Santa Fe, NM 87504 Monday – Friday between the hours of 8:00am – 5:00pm. Inspection request must be made in advance to ensure proper location and availability of staff is available. Inspections are limited to 1 hour.

Plaintiff contends that the Second Response was unreasonable and with this, we agree.[4] Defendants knew Plaintiff was incarcerated because, in the first request, Plaintiff informed Defendants that the inspection would need to occur at PNM. Defendants' response that provided only DPS's address and business hours was unreasonable under the circumstances.

{12} Defendants argue that "[n]othing in IPRA requires a public body to physically transport records to an IPRA requester's location" and point to the Attorney General's *New Mexico Inspection of Public Records Act Compliance Guide* at 29 (8th ed. 2015) to argue that reasonable opportunities to inspect need not "require an office to disrupt its normal operations or remain open beyond its normal hours of

---

[4]Because we conclude the Second Response was unreasonable under the circumstances, we do not consider whether the Second Response was proper under IPRA.

10

operations." By these arguments, Defendants focus entirely on rebutting Plaintiff's suggestion that Defendants transport original evidence to PNM. Defendants fail to demonstrate that their response to Plaintiff was reasonable considering all of the circumstances. Defendants' options for providing an opportunity to inspect were not limited to Plaintiff's suggested method of delivery. We need not decide what response would have been reasonable in these circumstances. Nor need we evaluate the alternative methods of delivery that Plaintiff offers in his briefs.[5] Defendants' duty was to be reasonable, considering all of the circumstances. An offer to an incarcerated person of an opportunity to visit a location outside the place of incarceration during business hours is not reasonable under the circumstances and does not align with the Legislature's clearly asserted public policy that "to provide persons with such information is an essential function of a representative government and an integral part of the routine duties of public officers and employees." Section 14-2-5. IPRA establishes that providing for inspection of public records is an essential function of government, which Defendants failed to reasonably perform in the present case.

---

[5]Plaintiff now posits that the "remedy is for this [C]ourt to order appellees to establish a practi[c]e that allows indigent and immobile citizens to access public records." Plaintiff did not raise this request in the district court, *see* Rule 12-321 NMRA (discussing preservation), nor does he provide any authority authorizing this Court to take such action.

11

{13}   Having concluded that Defendants have failed to provide an opportunity that was reasonable under the circumstances for Plaintiff to inspect nonexempt records, the remaining question is remedy. *See Britton*, 2019-NMCA-002, ¶ 35 (interpreting the remedies set forth under Sections 14-2-11 and -12). We therefore remand the matter to the district court to determine the appropriate remedy under IPRA.

**CONCLUSION**

{14}   For the reasons stated herein, we reverse the district court and remand for further proceedings.

{15}   **IT IS SO ORDERED.**


_____
                              **KATHERINE A. WRAY, Judge**

**WE CONCUR:**


_____
**ZACHARY A. IVES, Judge**


_____
**JANE B. YOHALEM, Judge**