The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number:

Filing Date: June 15, 2026

**NO. S-1-SC-40473**

**AMERICAN CIVIL LIBERTIES UNION OF NEW MEXICO,**

Plaintiff-Respondent,

v.

**NEW MEXICO CORRECTIONS DEPARTMENT and ANDREW KUHLMANN in his official capacity,**

Defendants-Petitioners.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Bryan P. Biedscheid, District Judge**

Cuddy & McCarthy, LLP
Scott P. Hatcher
Robert A. Corchine
Carlos J. Padilla
Carl J. Waldhart
Santa Fe, NM

for Petitioners

Davis Law New Mexico
Nicholas T. Davis
Andrew J. Lantz

Albuquerque, NM

American Civil Liberties Union of New Mexico
Maria Martinez Sanchez
Leon F. Howard, III
Albuquerque, NM

for Respondent

Rodey, Dickason, Sloan, Akin & Robb, PA
Charles K. Purcell
Albuquerque, NM

for Amicus Curiae New Mexico Foundation for Open Government

**OPINION**

**VIGIL, Justice.**

**I.    INTRODUCTION**

{1}    "Recognizing that a representative government is dependent upon an informed electorate," New Mexico's Inspection of Public Records Act (IPRA), NMSA 1978, §§ 14-2-1 to -12 (1947, as amended through 2025), grants "[e]very person . . . a right to inspect public records of this state." Sections 14-2-1, -5. This right of inspection is conditioned on several exceptions, including a catch-all or residual exception for records exempt from inspection "as otherwise provided by law." Section 14-2-1(N)[1]; *see also Jones v. City of Albuquerque Police Dep't*, 2020-NMSC-013, ¶ 19, 470 P.3d 252 (describing IPRA's "as otherwise provided by law" provision as a "'catch-all' exception"). We have explained that this catch-all exception "includes statutory and regulatory bars to disclosure, constitutionally

---

[1]The IPRA request at the center of this suit was made in October 2019. At that time, the "as otherwise provided by law" exception was codified as Section 14-2-1(H) (2019). The catch-all exception was moved to Section 14-2-1(L) in 2023 and to Section 14-2-1(N) in 2025. However, the language of the exception has remained unchanged throughout the pendency of these proceedings. *Compare* § 14-2-1(H) (2019), *with* § 14-2-1(L) (2023), *and* § 14-2-1(N) (2025). For the sake of consistency and readability, we refer only to the current 2025 version of IPRA and its catch-all exception, Section 14-2-1(N), although our analysis pertains to both the prior and current versions of the enactment.

mandated privileges, and privileges established by our rules of evidence." *Pacheco v. Hudson*, 2018-NMSC-022, ¶ 39, 415 P.3d 505 (internal quotation marks and citation omitted). In this appeal, we clarify the requirements that must be met before an administrative regulation will bar inspection under IPRA's catch-all exception.

{2} This matter arises from a request submitted by the American Civil Liberties Union of New Mexico (ACLU) to inspect records of the New Mexico Corrections Department (NMCD) related to the use of force at one of NMCD's correctional facilities. NMCD asserts that the requested records are exempt from inspection because its policies state that the records are confidential. The ACLU, which is joined in this appeal by amicus New Mexico Foundation for Open Government (NMFOG), argues that NMCD's internal policies do not create an enforceable "law" or a regulatory bar under IPRA's catch-all exception.

{3} For the reasons discussed herein, we explain that IPRA's exception for records exempted "as otherwise provided by law," § 14-2-1(N), incorporates an administrative regulation that has been formally promulgated and which effectuates a clear legislative intent for the confidentiality, secrecy, or nondisclosure of records. As NMCD's policies meet neither of these requirements, the policies do not create an enforceable regulatory bar under IPRA's catch-all exception. NMCD must allow

inspection of the records requested by the ACLU to the extent that those records are not exempt under another law or an IPRA exception.

## II. BACKGROUND

{4} In October 2019, the ACLU filed a request with NMCD seeking to inspect records on the use of force at the Southern New Mexico Correctional Facility (SNMCF). The ACLU represents that this request is part of an investigation into complaints it had received about the violent use of force against inmates confined at SNMCF. The ACLU requested records "for the time period of July 1, 2019 to the present . . . pertaining to institutional use of force, restraints, and/or chemical agents . . . used to discipline, restrain, subdue, or otherwise exert control over any person in SNMCF custody." The ACLU also sought incident reports on the use of force at SNMCF, the names of employees involved in any such incidents, and "[a]ll policies and procedures regarding institutional use of force, restraints, and/or chemical deployment at SNMCF."

{5} NMCD categorically denied the ACLU's request. NMCD asserted that the records were exempt from inspection because "NMCD has designated its use of force policies as confidential." NMCD further indicated that, to the extent that the requested records "implicate inmate grievances," those "grievances and complaints are confidential or nonpublic information."

{6}     The ACLU sued to enforce its request. Both the ACLU and NMCD subsequently filed cross-motions for summary judgment in the district court, seeking a ruling on whether IPRA's catch-all exception applies to the requested records. As support for its summary judgment motion, NMCD asserted that disclosure of incident or inmate grievance reports would violate NMCD's institutional records policy, N.M. Corr. Dep't, Institutional Records, CD-040101(C)(1)(g) (June 9, 2016),[2] and it attached its inmate grievance policies which provide that inmate "[g]rievances are . . . privileged," N.M. Corr. Dep't, Inmate Grievances, CD-150500 *Policy* (C)(8) (June 14, 2018),[3] and "will be treated as strictly confidential," *id.* at CD-150501(G).[4] NMCD attached an affidavit from its chief deputy general counsel attesting that the confidentiality provisions in these policies promoted prison safety by assuring inmates that they would not be subject to retaliation for lodging

---

[2]Available at https://www.cd.nm.gov/wp-content/uploads/2023/12/CD-040100.pdf [https://perma.cc/LXS3-YZDG]. The version of CD-040101 that NMCD attached to its motion was titled "Institutional Records." While the policy was last updated in 2016, the current version of this policy available through NMCD's website is titled "Inmate Records."

[3]Available at https://www.cd.nm.gov/wp-content/uploads/2023/12/CD-150500.pdf [https://perma.cc/CBF5-3J2K].

[4]While NMCD cited only CD-040101(C)(1)(g) in its motion for summary judgement, it attached excerpts from CD-150500 and CD-150501 along with CD-040101.

complaints about other inmates and staff. NMCD also cited the heavily redacted front page of its use-of-force policy, CD-130600, which provides, "NOT TO BE PLACED IN INMATE LIBRARIES OR AVAILABLE TO THE PUBLIC. LIMITED DISTRIBUTION AND DUPLICATION TO EMERGENCY PREPAREDNESS SECURITY MANUALS ONLY." NMCD's counsel further attested that "confidentiality of [its use-of-force] policies is instrumental to their effectiveness." NMCD's counsel further asserted—in a later affidavit attached to NMCD's motion to reconsider summary judgment favoring the ACLU—that secrecy surrounding the circumstances under which correctional officers are permitted to use force contributes to a "perceived unpredictability of officers [which] disincentivizes inmate violence." (Emphasis omitted.) In its motion for summary judgment, the ACLU argued that IPRA's catch-all exception only incorporates formally promulgated regulations, authorized by statutes that specifically contemplate the confidentiality of documents or information and that NMCD had not identified such regulations.

{7}     The district court initially denied NMCD's summary judgment motion and took the ACLU's summary judgment motion under advisement pending an *in-camera* review of the records. After reviewing the records, the district court issued another order explaining that its "analysis and application of the law has changed"

and that the court now concluded that NMCD could withhold portions of the records if "clearly shown to be necessary for administration of the Corrections Act[, NMSA 1978, §§ 33-1-1 to -9 (1969, as amended through 2009)]." Applying this standard, the district court found that certain records, including portions of NMCD's use-of-force policy, "properly fall under the [catch-all] exception in their entirety or must be redacted prior to inspection because of necessity under [the Corrections Act]."

{8} Both NMCD and the ACLU filed notices of appeal. The Court of Appeals reversed, concluding the district court erred in applying a "clear necessity" standard to withhold portions of the requested records. *Am. Civ. Liberties Union of N.M. v. N.M. Corr. Dep't*, 2024-NMCA-071, ¶¶ 4, 18-19, 556 P.3d 565. The Court of Appeals also held, "[A] general enabling statute alone is insufficient to qualify for the catch-all exception," and a regulation seeking to exempt records from inspection instead must be "based on more specific statutes that relate[] to the effects of disclosure and the confidentiality of the information." *Id.* ¶¶ 14, 15. Reasoning that NMCD's policies did not meet this standard, the Court of Appeals held that the records must be made available for inspection. *Id.* ¶¶ 15-19. We granted NMCD's petition for writ of certiorari to review the Court of Appeals' opinion. We now affirm.

## III.    DISCUSSION

{9}    This is not the first time that we have considered whether IPRA's "as otherwise provided by law" exception, § 14-2-1(N), incorporates an administrative regulation which seeks to limit the right to inspect public records. In *City of Las Cruces v. Public Employee Labor Relations Board* (*Public Employee*), we held that IPRA's catch-all exception "contemplates [an administrative] regulation properly promulgated" which has "the force of law." 1996-NMSC-024, ¶ 5, 121 N.M. 688, 917 P.2d 451, *overruled in part on other grounds by Republican Party of N.M. v. N.M. Tax'n & Revenue Dep't*, 2012-NMSC-026, ¶ 16, 283 P.3d 853. We further explained that a regulation will have the force of law if "promulgated in accordance with the statutory mandate to carry out and effectuate the purpose of the applicable statute." *Public Employee*, 1996-NMSC-024, ¶ 5. We now consider whether IPRA's catch-all exception, as construed by *Public Employee*, incorporates NMCD's policies asserting the confidentiality of certain public records. As discussed below, we conclude that the policies were not properly promulgated and do not have the force of law under IPRA's catch-all exception. *See id.*

## A.    *Public Employee* and the Scope of IPRA's Catch-All Exception

{10}    The meaning of IPRA's "as otherwise provided by law" exception, § 14-2-1(N), presents an issue of statutory construction. "The standard of review for issues

of statutory interpretation and construction is *de novo*." *State v. Johnson*, 2001-NMSC-001, ¶ 5, 130 N.M. 6, 15 P.3d 1233. When construing the meaning of a statute, "We examine the plain language of the statute as well as the context in which it was promulgated, including the history of the statute and the object and purpose the Legislature sought to accomplish." *Jones*, 2020-NMSC-013, ¶ 17 (internal quotation marks and citation omitted). Throughout this analysis, we are guided by IPRA's purpose, which is "to ensure . . . that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of public officers and employees." Section 14-2-5; *see also Faber v. King*, 2015-NMSC-015, ¶ 8, 348 P.3d 173 ("We construe IPRA in light of its purpose.").

{11}     We begin with *Public Employee*, where we considered whether IPRA's catch-all exception included a Public Employee Labor Relations Board (Labor Board) regulation providing for the confidentiality of representation elections. 1996-NMSC-024, ¶¶ 1-3. The City of Las Cruces had filed an IPRA request seeking records from the Labor Board relating to a police officer association's representation election, including a petition containing signatures of the collective bargaining unit members. *Id.* ¶ 3. The Labor Board refused the City's IPRA request, relying in part on the Labor Board's regulation which provided, "'Evidence of a showing of interest submitted to the Board in support of a representation petition . . . shall be kept

confidential by the Board.'" *Id.* (emphasis omitted) (citations omitted); *see also* 11.21.1.21 NMAC (compiling the Labor Board's ab initio regulation, the current version of which is, in effect, identical to the regulation at issue in *Public Employee*). The City sued to enforce its request. *Public Employee*, 1996-NMSC-024, ¶ 4. The district court denied relief, and the Court of Appeals certified the City's appeal to this Court. *Id.*

{12}     On certification, the City argued that IPRA's catch-all exception "incorporates only confidentiality provisions of *statutes*, thus precluding the [s]tate from relying upon regulations promulgated by an administrative board." *Id.* ¶ 5. The City further argued that the Labor Board's regulation improperly attempted to modify IPRA "in order to ensure the confidentiality of the documents at issue." *Id.* We disagreed, holding that the exception for records exempted "'as otherwise provided by law' as used in [Section 14-2-1(N)] contemplates a regulation properly promulgated to further the legislative intent behind the [Public Employee Bargaining Act]." *Public Employee*, 1996-NMSC-024, ¶ 5. We reasoned that the Labor Board's regulation was authorized by statutes that protected employees' rights to organize without interference and "to conduct representation elections in secret." *Id.* ¶ 6. We further concluded that the regulation "effectuates the provisions of the [Public Employee Bargaining Act] to protect the rights of public employees to collective

bargaining and to ensure that their choice to do so remains private." *Id.* ¶ 7. Thus, we held the Board could withhold the records pursuant to its "statutorily authorized regulation." *Id.*

{13}     As an additional issue, *Public Employee* considered whether the Labor Board's records could be withheld under the rule of reason. *Id.* ¶¶ 4, 8-10. This Court introduced the rule of reason in *State ex rel. Newsome v. Alarid*, 1977-NMSC-076, ¶¶ 33-35, 90 N.M. 790, 568 P.2d 1236, *overruled by Republican Party*, 2012-NMSC-026, ¶ 16. Under the rule of reason, we recognized a nonstatutory exception for the inspection of records when disclosure ran "contrary [to] statute or countervailing public policy." *Newsome*, 1977-NMSC-076, ¶ 34; *Bd. of Comm'rs v. Las Cruces Sun-News*, 2003-NMCA-102, ¶ 17, 134 N.M. 283, 76 P.3d 36 ("[T]he countervailing public policy, or 'rule of reason' as it is often referred to, is a non-statutory confidentiality exception." (citation omitted)), *overruled in part by Republican Party*, 2012-NMSC-026, ¶ 16. Applying the rule of reason, *Public Employee* concluded that the policies and privacy interests underlying employees' rights to organize "would be seriously undermined" by disclosure of the requested records. 1996-NMSC-024, ¶ 11. We therefore held that protecting employees' privacy interests under the rule of reason provided an additional basis for withholding the records. *Id.* ¶ 12.

{14} Sixteen years after *Public Employee*, we abandoned the rule of reason in *Republican Party*, 2012-NMSC-026, ¶ 16. There, we noted that *Newsome* had adopted the rule of reason because, at the time, the Legislature had not yet "'delineat[ed] what records are subject to public inspection and those that should be kept confidential in the public interest'" under IPRA. *Republican Party*, 2012-NMSC-026, ¶ 15 (quoting *Newsome*, 1977-NMSC-076, ¶ 33). However, subsequent amendments to IPRA had "obviat[ed] any need that existed for application of the 'rule of reason[]' by enumerating specific exceptions to disclosure . . . and maintaining the exception 'as otherwise provided by law.'" *Id.* ¶ 16 (citation omitted). We therefore overruled prior cases applying the rule of reason, instructing our courts to instead "restrict their analysis to whether disclosure under IPRA may be withheld because of a specific exception contained within IPRA, or statutory or regulatory exceptions, or privileges adopted by this Court or grounded in the constitution." *Id.*

{15} Accordingly, *Public Employee* has been overruled to the extent it applied the rule of reason as grounds for withholding the Labor Board's records. 1996-NMSC-024, ¶¶ 8-12. However, the rule of reason provided a nonstatutory exception to the right of inspection, distinct from IPRA's catch-all exception. *City of Farmington v. Daily Times*, 2009-NMCA-057, ¶¶ 8, 11, 146 N.M. 349, 210 P.3d 246 (explaining

that the rule of reason doctrine applies "only to claims of confidentiality asserted for public records that do not fall into one of the statutory exceptions to disclosure contained in Section 14-2-1," including the catch-all exception which instead applies "to exceptions contained in other statutes and properly promulgated regulations" (internal quotation marks and citation omitted)), *overruled in part by Republican Party*, 2012-NMSC-026, ¶ 16. Thus, *Public Employee* remains good law with respect to its construction of IPRA's "as otherwise provided by law" exception, § 14-2-1(N).

**B.    The Catch-All Exception Includes Formal Regulations Authorized by Statutes Expressing an Intent for the Confidentiality of Records**

{16}    The parties disagree about how *Public Employee* applies to the records sought in the ACLU's request. NMCD argues that its policies are authorized by the Corrections Department Act, NMSA 1978, §§ 9-3-1 to -13 (1977, as amended through 2019), in Section 9-3-5(E), and by the Corrections Act in Section 33-1-6(B). Both Section 9-3-5(E) and Section 33-1-6(B) are part of NMCD's general enabling acts, granting the Secretary of Corrections the authority to "make and adopt such reasonable and procedural rules and regulations as may be necessary to carry out the duties of the department and its divisions." Section 9-3-5(E); *accord* § 33-1-6(B) (authorizing the Secretary of Corrections to "adopt rules and regulations necessary for administration of the Corrections Act"). NMCD reasons that the confidentiality

provisions in its policies "carry out and effectuate" its duties under the Corrections Act and Corrections Department Act and thus have the force of law as contemplated by *Public Employee*, 1996-NMSC-024, ¶ 5.

{17} The ACLU and NMFOG disagree. They argue that an administrative regulation must be formally promulgated in order to qualify for IPRA's catch-all exception. *See id.* (stating that IPRA's catch-all exception incorporates "properly promulgated" regulations). NMFOG argues that NMCD's policies are insufficiently formal and characterizes the confidentiality language in those policies as "mere rubber-stamp legends affixed to the records at the direction of the Secretary of Corrections." The ACLU and NMFOG further assert that, even if formally promulgated, an administrative regulation must effectuate a statute specifically contemplating the confidentiality of documents or information in order to qualify for IPRA's catch-all exception. In their view, NMCD's enabling statutes are too generalized to provide the statutory authority for even a formally-promulgated confidentiality regulation.

{18} We agree with the ACLU and NMFOG, as we conclude that NMCD proposes too broad a reading of *Public Employee* and of IPRA's catch-all exception. *Republican Party* instructs our courts to narrowly apply exceptions to IPRA's right of inspection, restricting their analysis to whether a record may be withheld under

one of several specifically delineated categories or the catch-all exception. *See* 2012-NMSC-026, ¶ 16. We likewise conclude that courts should take a narrow approach when incorporating regulatory bars to disclosure under IPRA's "as otherwise provided by law" exception, § 14-2-1(N). *Cf. Dunn v. N.M. Dep't of Game & Fish*, 2020-NMCA-026, ¶ 14, 464 P.3d 129 (noting that *Republican Party* prohibits an agency's creation of "an additional policy-based exception" under IPRA that is not authorized by IPRA or other statutes, regulations, or constitutional or evidentiary privileges).

{19}     Administrative agencies have been delegated the authority to promulgate regulations "in a reasonable manner consistent with legislative intent, in order to develop the necessary policy to respond to unaddressed or unforeseen issues." *City of Albuquerque v. N.M. Pub. Regul. Comm'n*, 2003-NMSC-028, ¶ 16, 134 N.M. 472, 79 P.3d 297. But "an administrative agency has no power to create a rule or regulation that is not in harmony with its statutory authority." *Princeton Place v. N.M. Hum. Servs. Dep't, Med. Assistance Div.*, 2022-NMSC-005, ¶ 29, 503 P.3d 319 (internal quotation marks and citation omitted). Under IPRA, "The citizen's right to know is the rule and secrecy is the exception." *Newsome*, 1977-NMSC-076, ¶ 34. Accordingly, an administrative agency does not have the authority to promulgate a regulation that is inconsistent with IPRA unless the Legislature has

specifically delegated authority to the agency to formally promulgate regulations which limit the right of inspection.

{20} *Public Employee* supports this conclusion. While holding that Section 14-2-1(N)'s "as otherwise provided by law" language encompasses administrative regulations, *Public Employee* also described that regulation as "properly promulgated," as having "the force of law," and as "statutorily authorized." *Public Employee*, 1996-NMSC-024, ¶¶ 5, 7. To meet these descriptors, a regulation must be a "legislative rule," meaning that the regulation has been authorized by the Legislature and promulgated using formal rulemaking procedures involving public notice and comment and a public hearing. *See City of Albuquerque*, 2003-NMSC-028, ¶¶ 16-18 (explaining that the Legislature may delegate authority to an administrative agency to issue a legislative rule after a period of public notice and comment and public hearing and that such legislative rules will carry the force of law). In the absence of these formal rulemaking procedures, an agency's rules or policies will serve only as "interpretive rules," offering guidance to staff and the public about the agency's interpretation of its enabling statutes and legislative rules. *Princeton Place*, 2022-NMSC-005, ¶¶ 27-30. Unlike legislative rules, these interpretive rules do not have the force of law. *Id.* ¶ 30. *Public Employee* held that

IPRA's catch-all exception incorporates a formally promulgated legislative rule, *see* 1996-NMSC-024, ¶ 12, not an agency's interpretive guidance.

{21} We also note that the Labor Board's regulation in *Public Employee* effectuated statutes which clearly expressed an intent for the confidentiality of employees' representation elections. *See id.* ¶¶ 5-6. Indeed, *Public Employee* emphasized that the authorizing statutes "specifically provide[d]" that employers were prohibited from interfering with, discouraging, or discriminating against employees with respect to their participation in a labor organization and specifically guaranteed the rights of employees to organize and "to conduct representation elections in secret." *Id.*; *see also Edenburn v. N.M. Dep't of Health*, 2013-NMCA-045, ¶¶ 24-26, 299 P.3d 424 (explaining that the formally promulgated regulation in *Public Employee* carried the force of law "because the authorizing statute specifically prohibited discouraging, interfering with, restraining, or otherwise impeding employees' rights to organize").

{22} Consistent with this discussion, our Court of Appeals' decisions applying *Public Employee* have required that regulations seeking to exempt records disclosure under IPRA's catch-all exception be "based on and serve the purposes of a statute or statutes that are specifically related to the effects of disclosure and the confidentiality of the information." *Beck v. State ex rel. Child., Youth & Fams.*

*Dep't*, 2024-NMCA-082, ¶ 5, 560 P.3d 24 (brackets and internal quotation marks omitted) (quoting *Am. Civ. Liberties Union*, 2024-NMCA-071, ¶ 15). For example, in *Edenburn*, the Court of Appeals held that Department of Health regulations which provided that certain draft documents were nonrecords for purposes of the Public Records Act, NMSA 1978, §§ 14-3-1 to -23 (1959, as amended through 2015), did not serve as a regulatory bar to disclosure under IPRA's catch-all provision. *Edenburn*, 2013-NMCA-045, ¶¶ 23-26. The *Edenburn* Court noted that the regulations in *Public Employee* effectuated a legislative intent to protect the rights and privacy of public employees in collective bargaining. *Edenburn*, 2013-NMCA-045, ¶ 26. In contrast, the purpose of the Public Records Act was "solely organizational." *Edenburn*, 2013-NMCA-045, ¶ 26 (citing Section 14-3-6). Thus, *Edenburn* held that the regulations authorized to effectuate the Public Records Act's organizational purpose did not have the force of law for purposes of IPRA's catch-all exception. *Id.* We agree with the Court of Appeals that, under *Public Employee*, the legislation which serves as the authority for a regulation must express an intent specifically pertaining to the confidentiality or nondisclosure of records. Such legislative specificity is necessary to prevent IPRA's catch-all exception from "swallow[ing] the rule of disclosure based on the whim of NMCD or other government agencies." *Am. Civ. Liberties Union*, 2024-NMCA-071, ¶ 16.

{23} Accordingly, we reaffirm and clarify our holding in *Public Employee* that IPRA's catch-all exception incorporates regulatory bars to disclosure when (1) the regulation is legislatively authorized and has been formally promulgated through a process involving public notice and comment and a public hearing, as required by applicable administrative law, and (2) the regulation effectuates a statute or statutes revealing a clear legislative intent for the confidentiality, secrecy, or nondisclosure of the records. These requirements ensure that regulatory exceptions to disclosure are applied consistently with both the legislative intent to grant the public a general right of inspection, §§ 14-2-1, -5, and a legislative intent to delegate authority to an administrative agency to limit that right of inspection.

{24} When considering regulatory exceptions to the right of inspection, courts should avoid weighing policy interests, as this balancing of competing interests is inconsistent with our abandonment of the rule of reason in *Republican Party*, 2012-NMSC-026, ¶ 16. The regulation must instead effectuate a clearly expressed legislative intent to exempt the records from disclosure. *See Libit v. Univ. of N.M. Lobo Club*, 2022-NMCA-043, ¶ 13, 516 P.3d 217 ("When the Legislature has intended to exempt records from public inspection in other enactments, it has done so expressly by stating either that records are not public records or that records are not subject to disclosure under IPRA."). Nevertheless, the Legislature's intent to

exempt the records need not be explicit, and a regulation barring disclosure does not need to "simply repeat the language of the authorizing statute," as otherwise there would be no need for the regulation. *Beck*, 2024-NMCA-082, ¶ 30. For example, in *Beck*, the Court of Appeals held that the Children, Youth and Families Department could withhold records from public inspection under regulations authorized by multiple statutes expressing an intent to protect the identities of children and families in the care of the department. *Id.* ¶¶ 29-30. The Court of Appeals concluded that the regulation was lawfully extended to protect foster parents' identities, even though the authorizing statutes only explicitly mentioned adoptive parents, because the regulation effectuated the intent of the authorizing statutes. *Id.* We view this result in *Beck* as being consistent with *Public Employee* and with the requirements we have clarified herein.

**C.      IPRA's Catch-All Provision Does Not Incorporate NMCD's Policies**

{25}      We now apply our holding to the circumstances presented. We conclude that NMCD's confidentiality policies do not provide an enforceable regulatory exception to the right of inspection under Section 14-2-1(N).

**1.      NMCD's confidentiality policies were not formally promulgated**

{26}      We first conclude that the confidentiality provisions in NMCD's inmate records and use-of-force policies are not "regulation[s] properly promulgated" as

required by *Public Employee*, 1996-NMSC-024, ¶ 5, and by IPRA's catch-all exception, § 14-2-1(N). NMCD asserts, and we agree, that the Secretary of Corrections is generally authorized to adopt policies pursuant to the Corrections Act, § 33-1-6(B), and the Corrections Department Act, § 9-3-5(E). However, the record does not show that its confidentiality policies were formally promulgated under a process involving public notice and comment and a public hearing.

{27} Rather than attempting to show that these policies were formally promulgated, NMCD instead asserts that formal rulemaking procedures do not apply to its policies. NMCD points out that the State Rules Act, NMSA 1978, §§ 14-4-1 to -11 (1967, as amended through 2017), provides that a "rule" as defined by that enactment, "does not include rules relating to the management, confinement, discipline or release of inmates of any penal or charitable institution." Section 14-4-2(F). NMCD reasons that its policies address the management, confinement, and discipline of inmates and thus carry the force of law notwithstanding any compliance with the procedures of the State Rules Act. While we acknowledge that Section 14-4-2(F) expresses an intent to exclude inmate rules from the State Rules Act, we disagree that the confidentiality provisions in NMCD's policies fall within the scope of a Section 14-4-2(F) inmate rule exception to the rulemaking process referenced in Section 14-4-2(G). Although the substantive provisions of NMCD's policies are

directed towards inmates, the portions of those policies which seek to withhold records from public inspection plainly affect the public at large, not just the inmates at NMCD's penal institutions.

{28}    Similarly, the Corrections Act provides that:

> [N]o regulation affecting any person or agency outside [NMCD] shall be adopted, amended or repealed without a public hearing on the proposed action . . . . Notice of the subject matter of the regulation . . . shall be published once at least thirty days prior to the hearing . . . . All rules and regulations shall be filed in accordance with the State Rules Act.

Section 9-3-5(E). We can think of no better example of a "regulation affecting any person or agency outside" of NMCD than policies which seek to exempt records from public inspection. *Id.*; *cf. N.M. Found. for Open Gov't v. Corizon Health*, 2020-NMCA-014, ¶ 21, 460 P.3d 43 ("Information about the mistreatment and abuse of New Mexico inmates . . . is exactly the type of public information that IPRA contemplates must be disclosed to the public in order to hold its government accountable."). Thus, we disagree with NMCD that its confidentiality policies have the force of law even though they were not formally promulgated. Rather, the Legislature plainly intended formal rulemaking procedures to apply to NMCD rules and regulations which affect the rights of the public. Section 9-3-5(E).

{29}    Because NMCD failed to promulgate its confidentiality policies in accordance with formal rulemaking procedures, those policies serve only as interpretive rules

which provide internal guidance about the treatment of NMCD's records. *Princeton Place*, 2022-NMSC-005, ¶ 28. Described as potentially persuasive as opposed to controlling, *id.* ¶ 30, interpretive rules such as NMCD's informal policies do not create an enforceable regulatory bar to inspection under IPRA's "as otherwise provided by law" exception, § 14-2-1(N).

**2.     Even if formally promulgated, NMCD's policies do not effectuate a statute expressing a legislative intent for the confidentiality of the records**

{30}     Even if the confidentiality provisions in NMCD policies had been formally promulgated, NMCD has not shown that the policies effectuate a statute or statutes that express a clear legislative intent for the confidentiality of NMCD's records. NMCD identifies only its general rulemaking statutes, § 9-3-5(E); § 33-1-6(B), as the authority for these confidentiality provisions. The statutes generally provide that the Secretary of Corrections may adopt "rules and regulations as may be necessary to carry out the duties of the department and its divisions." Section 9-3-5(E); § 33-1-6(B) (providing that the Secretary of Corrections shall "adopt rules and regulations necessary for administration of the Corrections Act, and enforce and administer those so adopted"). But these statutes are silent on NMCD's authority to promulgate rules pertaining to the confidentiality of the records sought in the ACLU's request. These statutes thus do not provide the clear expression of legislative intent as required by *Public Employee*, 1996-NMSC-024, ¶ 5.

{31} NMCD nevertheless argues that we should construe Section 9-3-5(E) and Section 33-1-6(B) in harmony with statutes and constitutional provisions which require NMCD to maintain safe prisons. *See, e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) (concluding that a prison official's deliberate indifference to a substantial risk of serious harm may violate an inmate's rights under the cruel and unusual punishment clause of the Eighth Amendment to the United States Constitution). NMCD further suggests that this Court should defer to the Secretary of Corrections' determination that these confidentiality provisions effectuate these implicit safety concerns. In this regard, NMCD suggests that we should apply the inmate civil rights First Amendment standard adopted in *Turner v. Safley*, 482 U.S. 78, 89-90 (1987), when considering whether its confidentiality policies effectuate these implicit safety concerns. Thus, under NMCD's proposed standard, its confidentiality provisions effectuate Section 9-3-5(E) and Section 33-1-6(B) and thus carry the force of law for purposes of IPRA's catch-all exception if shown to be "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89.

{32} We conclude that *Turner* is inapposite to the question presented. Courts have accorded significant deference to prison administrators in adopting prison rules because "[s]ubjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security

problems and to adopt innovative solutions to the intractable problems of prison administration." *Id.*; *accord Overton v. Bazzetta*, 539 U.S. 126, 131-32 (2003) (recognizing that *Turner*'s standard promotes separation of powers because prison administrators "bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them"). But the principles of separation of powers and judicial restraint underlying *Turner*'s deferential civil rights standard shed little light on legislative intent in the IPRA context. Unlike *Turner*, which addresses concerns unique to prison administration, IPRA addresses broader societal concerns about governmental transparency and the need to sustain an informed electorate. Section 14-2-5. We therefore decline to rely on *Turner* as a means for construing an implicit legislative intent to require confidentiality of NMCD's records, as IPRA and *Turner* address markedly different interests. *See Am. Civ. Liberties Union*, 2024-NMCA-071, ¶ 11 ("*Turner*'s discussion of 'legitimate penological interests' and deference to prison authorities is irrelevant to NMCD's obligations under IPRA. To import *Turner*'s analysis here would be to mix rutabagas and watermelons; the inquiries are that different." (citation omitted)).

{33}     Applying *Turner*'s standard in the IPRA context would also resurrect the rule of reason doctrine that we have abandoned, as we would be required to weigh the

legitimacy of NMCD's asserted safety interests against the governmental transparency interests underlying IPRA's right of inspection.[5] NMCD asserts that its proposed standard would not require a balancing of interests because this Court would merely grant NMCD the same deference the agency has been given in the context of civil rights litigation. But this deference would only further undermine IPRA's right of inspection. As amicus NMFOG points out, the language in Section 9-3-5(E) and Section 33-1-6(B) which delegates rulemaking authority to the Secretary of Corrections is identical to the language used in other statutes which delegate rulemaking authority to other New Mexico agencies. *Compare* § 9-3-5(E) ("The secretary [of the Corrections Department] may make and adopt such reasonable and procedural rules and regulations as may be necessary to carry out the duties of the department and its divisions."), *with* NMSA 1978, § 9-2A-7(D) (1993) ("The secretary [of the Children, Youth, and Families Department] may make and adopt such reasonable and procedural rules and regulations as may be necessary to

---

[5]Although no party defends the district court's reasoning in this appeal, we also reverse the district court insofar as it applied a "clear necessity" standard in determining that NMCD could withhold portions of the requested records. We agree with the Court of Appeals that the district court's "clear necessity" standard would require courts to engage in a balancing of interests when determining whether an exemption is necessary for a statute's purpose, an analysis which is similar to the abandoned rule of reason doctrine. *Am. Civ. Liberties Union*, 2024-NMCA-071, ¶ 18.

carry out the duties of the department and its divisions."), *and* NMSA 1978, § 9-7-6(E) (2017) ("The secretary [of the Department of Health] may make and adopt such reasonable procedural rules as may be necessary to carry out the duties of the department and its divisions."), *and* NMSA 1978, § 9-19-6(E) (2015) ("The secretary [of the Department of Public Safety] may make and adopt such reasonable and procedural rules and regulations as may be necessary to carry out the duties of the department and its divisions."). We fail to see how Section 9-3-5(E) and Section 33-1-6(B) differ from these other enabling statutes with respect to the authority to promulgate IPRA exceptions. And if we were to apply *Turner*'s deferential standard in construing this generalized enabling language, we would essentially be recognizing these other agencies' authority to exempt records from inspection so long as they articulate a rational basis on which to do so. *See State v. Swayne*, 2025-NMSC-047, ¶ 24, 580 P.3d 192 (explaining that *Turner* "established a form of rational basis review for the validity of prison rules"). This would eviscerate the IPRA right of inspection. We cannot construe Section 9-3-5(E) and Section 33-1-6(B) so discordantly with IPRA's purpose, which is to provide the public with "the greatest possible information" on official actions. Section 14-2-5.

{34}   As explained herein, *Public Employee* requires regulatory bars under IPRA's catch-all exception to be grounded in a clear expression of legislative intent for the

confidentiality, secrecy, or nondisclosure of records. Aside from the prison safety concerns embodied in *Turner* and *Brennan*, NMCD does not identify anything in Section 9-3-5(E)'s and Section 33-1-6(B)'s language, structure, history, or context which reveals a clear legislative intent for the secrecy of the records sought in the ACLU's IPRA request. As NMCD does not identify any other statutory authority for its confidentiality policies, we conclude that the policies do not "carry out and effectuate the purpose of [an] applicable statute" as relevant to IPRA's catch-all exception. *Public Employee*, 1996-NMSC-024, ¶ 5.

{35}     NMCD may issue interpretive rules guiding its staff about the internal treatment of its records. However, NMCD may not create an enforceable regulatory exception to IPRA's right of inspection in the absence of a clear legislative delegation of authority to do so. NMCD must instead appeal to the Legislature if it believes that its prison safety concerns support an exemption for these records.

**IV.     CONCLUSION**

{36}     IPRA's exception for public records that may be withheld from inspection "as otherwise provided by law," § 14-2-1(N), includes an administrative regulation which has been formally promulgated and which effectuates a clear legislative intent for the confidentiality, secrecy, or nondisclosure of records. NMCD's internal policies do not meet these requirements. We therefore affirm the Court of Appeals

and reverse the district court to the extent that it held that NMCD could withhold portions of the records requested by the ACLU under IPRA's catch-all exception. We remand this matter back to the district court with instructions to order that the requested records be made available for inspection to the extent that they are not exempt under another law or IPRA exception.

{37}    **IT IS SO ORDERED.**

 

**MICHAEL E. VIGIL, Justice**

**WE CONCUR:**

**C. SHANNON BACON, Justice**

**DAVID K. THOMSON, Justice**

**BRIANA H. ZAMORA, Justice**

**RICHARD BOSSON, Justice, retired**
**Sitting by designation**